Daniel P. and Georgianna **DONNELL**, et al., Plaintiffs,

v.

**UNITED STATES of America**, et al., Defendants.

Civ. No. 93–20–P–C.

United States District Court, D. Maine.

July 22, 1993.

Mark Furey, Thompson, McNaboe, Ashley & Bull, Portland, ME, for plaintiffs.

David Collins, Asst. U.S. Atty., Portland, ME and Joshua Levin, U.S. Dept. of Justice, Environmental & Natural Defense Section, Washington, DC, for defendants.

*MEMORANDUM OF DECISION AND ORDER*

GENE CARTER, Chief Judge.

In this two-count action, Plaintiffs, Daniel and Georgianna Donnell ("the Donnells") seek both preliminary and permanent injunctions commanding Defendants, the Army Corps of Engineers (hereinafter "the Army Corps" or "the Government"), and its agents, to rescind its August and December 1992 orders commanding Plaintiffs to remove certain pilings from their wharf. Specifically, Count I alleges that the Government's orders that Plaintiffs remove certain pilings from their wharf in York Harbor violate the Administrative Procedure Act, 5 U.S.C.A. § 702, and Count II alleges that the Government's order constitutes a "taking" of private property for a private purpose, in violation of the Fifth Amendment of the United States Constitution.

■ The Court now has before it Plaintiffs' Motion for Partial Summary Judgment on Count II of its Complaint (Docket No. 15), accompanied by a Memorandum (Docket No. 16), supporting affidavit with exhibits (Docket No. 17), and a Statement of Undisputed Material Facts (Docket No. 18).[1] Defendants oppose such motion (Docket No. 23–2).

*SUMMARY JUDGMENT*

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has recently articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered

---

1. The Court also has before it at this time Defendants' Motion for Partial Summary Judgment on Count II of the Complaint (Docket No. 22), accompanied by a supporting memorandum (Docket No. 23–1) and Statement of Undisputed Material Facts (Docket No. 24). However, Defendants' Statement of Undisputed Material Facts, submitted along with its Partial Summary Judgment Motion, does not contain *any* record citations supporting the asserted facts.

Local Rule 19 provides in relevant part:
In addition to the material required to be filed by this rule, upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of material facts, *supported by appropriate record citations,* as to which the moving party contends there is no genuine issue to be tried.

Local Rule 19(b)(1) (emphasis added). Because Defendants' Statement of Undisputed Material Facts violates Local Rule 19 by failing to provide record citations for its undisputed facts, the Court must deny Defendants' Motion for Partial Summary Judgment. Plaintiffs' Motion to Strike Defendants' Statement of Undisputed Facts (Docket No. 30) will also be denied.

proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limits differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–59 [106 S.Ct. at 2510–16]. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989).

2. The Court must comment on the following portion of Defendants' Response to Plaintiffs Statement of Undisputed Facts:

> As a general comment to all eight of Plaintiffs' numbered paragraphs, Defendants do not assert a genuine dispute of material fact *but only as they involve Plaintiffs' Motion for Partial Summary Judgment*. However, some of these statements are not fully accurate or complete in ways that will likely raise genuine issues of material fact with respect to other issues in this case beyond the motion. Defendants reserve the right to present additional evidence as to Plaintiffs' stated facts as they affect the other issues in the case.

> In addition, Defendants respond to three specific paragraphs of Plaintiffs' Statement as follows [using their paragraph numbering]:

> 5. Add the following at the end of this paragraph: "By its letter of December 21, 1992, in ordering again the removal of 20 feet of the Varrell Wharf, the Corps stated its conclusion that the Brittons have a reasonable chance of obtaining state permits."

> 6. Substitute the following for the entire paragraph: "The State of Maine has acknowledged that it will process the Brittons' state permit applications once the Donnells' unauthorized structures are removed."

> 8. Substitute "non-commercial" for "private" in the first line of this paragraph.

## FACTS

For purposes of summary judgment, Defendants assert no genuine dispute of material fact. Defendants' Response to Plaintiffs' Statement of Material Facts (Docket No. 25) at 1. Therefore, for purposes of this motion, the Court relies on the facts as alleged by Plaintiffs.[2]

The undisputed facts in the case at bar are as follows: The Donnells own and operate Varrell Wharf, a marina in York Harbor, Maine. Varrell Wharf is now, and has always been, open to the public, serving commercial fishers, lobstermen, and various other boaters. During or before 1955, Varrell Wharf was expanded by driving pilings and setting floats in front of the property of the Donnells' abutter. These pilings and floats have been continuously in place since 1955. The abutter property is currently owned by Robert W. and Eleanor F. Britton ("the Brittons").

On or about January 27, 1984, the Donnells were issued a nationwide permit by the Army Corps to operate and maintain Varrell

Defendants' Response to Plaintiffs' Statement of Undisputed Facts (Docket No. 25) at 1–2.

The Government's suggestion that substitutions and additions be made in order to make Plaintiffs' Statement of Undisputed Facts more "fully accurate" is misplaced. Defendants' Response to Plaintiffs' Statement of Undisputed Facts (Docket No. 25) at 1; Memorandum in Support of Defendants' Motion for Leave to File an Amended Response to Plaintiffs' Statement of Undisputed Facts (Docket No. 35) at 2. The Government appears to misunderstand the purpose of the procedures on summary judgment implemented by the Rules of Procedure and amplified by the Local Rule. If the proposed additions are as important and noncontroversial as the Government alleges, the Government should have included them in *its own* Statement of Undisputed Facts in support of Defendants' Motion for Partial Summary Judgment.

Because the Court is unable to formulate *any* acceptable purpose for the Government's requested suggestions and additions at summary judgment, Plaintiffs' Motion to Strike Defendants' Response (Docket No. 28) will be granted as it relates to these requested additions and substitutions and Defendants' Motion for Leave to File an Amended Response to Plaintiffs' Statement of Facts (Docket No. 34) will be denied.

Wharf in navigable waters.[3] By virtue of a Maine statute, 12 M.R.S.A. § 558–A(6), the Donnells hold a constructive easement to occupy the submerged lands below Varrell Wharf. This constructive easement expires in the year 2005.

After having been suspended in January, the Donnells' nationwide permit was reinstated by the Army Corps in June of 1990. Such reinstatement was contingent upon the Donnells' removal of twenty feet· of float from Varrell Wharf to accommodate a wharf to be built by the Brittons.[4] By letter dated August 19, 1992, the Corps denied Plaintiffs' request for a public hearing, reasserted its revocation of the Donnells' permit, and again ordered the wharf removal based upon a finding by the Government that construction of the Britton wharf had begun.

■■■ By letter dated September 18, 1992, the Corps informed the Donnells that they would take no further action against

them pending an evaluation of additional information that had come to the Government's attention. Finally, by letter dated December 21, 1992, the Donnells were again ordered to remove pilings and twenty feet of float based upon the Government's finding that "Mr. Britton has a very reasonable chance of obtaining the necessary permits for him to build a dock and piers." The planned Britton wharf will be private and is intended for private use only.

### DISCUSSION [5]

■■■ The Takings Clause of the Fifth Amendment directs that "private property" shall not "be taken for public use, without just compensation." U.S. Const., Amend. V. The Supreme Court has long held that the Takings Clause applies to the states through the Fourteenth Amendment. *See Chicago Burlington & Quincy Railroad Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979

---

3. Title 33 Code of Federal Regulations section 330.2(b) (1992) defines nationwide permit as "a type of general permit which authorizes activities on a nationwide basis unless specifically limited." 33 C.F.R. § 330.2(b) (1992).

4. However, the Donnells were informed that such removal "will occur simultaneously with the construction of the abutter's pier, ramp, and float." Exhibit A to Plaintiff Daniel Donnell's Affidavit in Support of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 17).

5. The Court notes with some frustration that neither party's brief was very helpful in resolving the legal issues in this case. Many of the issues that play a significant role in this Court's understanding and analysis of this case were completely ignored by counsel.

In addition, throughout its brief, the Government misstates the applicable law in this case, arguing both that a taking solely for a private purpose is constitutionally permissible and that, even if an unconstitutional taking had occurred, this Court lacks jurisdiction. The Court addresses these misstatements of the law as follows:

First, it is clear that under the Fifth Amendment, a taking for a public usage is permissible, if compensated. *Preseault v. Interstate Commerce Commission,* 494 U.S. 1, 11, 110 S.Ct. 914, 921, 108 L.Ed.2d 1 (1990). On the other hand, the Supreme Court has repeatedly stated that " 'one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid.' " *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81

L.Ed.2d 186 (1984) (emphasis added) (citing cases prohibiting private takings "even though compensation be paid") (quoting *Thompson v. Consolidated Gas Utilities Corp.,* 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1937). Thus, a taking that is executed *solely* to confer a private benefit on a particular private party is constitutionally impermissible, even if compensated. *Hawaii Housing Authority,* 467 U.S. at 245, 104 S.Ct. at 2331.

Second, the Government argues that even if an unconstitutional taking has occurred here, Plaintiffs must seek relief in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491 *et seq.* The Court of Claims is a proper forum when private property has been taken for public use under legal proceedings and the government fails to make just compensation to the rightful owner. *United States v. Mitchell,* 445 U.S. 535, 540 n. 2, 100 S.Ct. 1349, 1352 n. 2, 63 L.Ed.2d 607 (1980). However, in the case at bar, Plaintiffs claim that the alleged taking is impermissible, *not because it is uncompensated,* but because it is for private purposes. Plaintiffs seek *injunctive* relief, rather than monetary damages. The Supreme Court has repeatedly stated that the Court of Claims has no power to grant equitable relief. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Glidden Co. v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 (1962); *Richardson v. Morris,* 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973) (*per curiam*); *Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 853, 43 L.Ed.2d 85 (1975) (*per curiam*). Thus, given its equitable nature, this case could not be heard by the Court of Claims.

(1897). Although the property interest protected by the Fifth Amendment arises from state law, federal constitutional law determines whether the interest created by the state rises to the level of "property" entitled to the protection of the Fifth Amendment. *Hoffman v. Warwick,* 909 F.2d 608, 615 (1st Cir.1990).

■ In the case at bar, the nationwide permit from the Army Corps does not confer property rights. Title 33 Code of Federal Regulations section 330.4(b)(3) explicitly provides: "Nationwide permits do not grant any property rights or exclusive privileges." 33 C.F.R. § 330.4(b)(3) (1992). However, state statute, 12 M.R.S.A. section 558–A(6), explicitly grants Plaintiffs a constructive easement in the submerged lands under their wharf. 12 Maine Revised Statutes Annotated section 558–A(6) provides in relevant part:

The owners of all structures actually upon submerged and intertidal lands on October 1, 1975, shall be deemed to have been granted a constructive easement for a term of 30 years on the submerged land directly underlying the structure.

12 M.R.S.A. § 558–A(6) (Supp.1992). Therefore, this Court must examine whether a constructive easement conferred by state statute amounts to a property interest protected by the Fifth Amendment.

### ANALYSIS

#### A. WHAT CONSTITUTES "PROPERTY" UNDER THE FIFTH AMENDMENT

■ Under federal constitutional law, easements generally are property interests subject to the strictures of the Fifth Amendment. *United States v. Welch,* 217 U.S. 333,

30 S.Ct. 527, 54 L.Ed. 787 (1910); *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (Government's taking of "easement of flight" over land constitutes taking for purposes of Fifth Amendment); *United States v. Virginia Electric & Power Co.,* 365 U.S. 624, 627, 81 S.Ct. 784, 787, 5 L.Ed.2d 838 (1961) (flowage easement is property within the meaning of the Fifth Amendment). The case at bar, however, concerns a *constructive* easement. There is no Maine case law on constructive easements. In fact, very few cases, state or federal, employ the term "constructive easement." [6]

■ Black's Law Dictionary defines "constructive" as:

That which is established by the mind of the law in its act of *construing* facts, conduct, circumstances, or instruments. That which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law; hence, inferred, implied, or made out by legal interpretation; the word 'legal' being sometimes used here in lieu of 'constructive.'

*Black's Law Dictionary* (5th ed. 1979). The law has traditionally imbued constructive acts with the same rights and effects under the law as actual acts (*e.g.*, constructive delivery, constructive knowledge, constructive possession). This Court sees no reason why constructive easement should be treated any differently. Thus, given that an easement constitutes a property right under the Fifth Amendment, this Court holds that the constructive easement granted via 12 Maine Re-

---

**6.** This Court found only one case that was helpful in defining "constructive easement." In the Connecticut case, *D'Addario v. Commissioner of Transportation,* 172 Conn. 182, 183, 374 A.2d 163 (1976), the Government took from the plaintiff, by way of eminent domain, two drainage rights-of-way and an easement to install a chain link fence. The entire project covered an area about a mile in length, with most of the work performed outside plaintiff's property. *Id.* However, legal access to plaintiff's land was over plaintiff's driveway. *Id.* Because of the construction work across the driveway and its delayed completion, plaintiff was deprived of access to and use of his property for a period of

two years. *Id.* at 184, 374 A.2d 163. The Supreme Court of Connecticut called such deprivation a "constructive easement by the State over the plaintiff's property." *Id.* At a later date, in addition to allowing reimbursement for the taking of plaintiff's property by eminent domain, the Court allowed reimbursement for the Government's constructive easement. *D'Addario v. Commissioner of Transportation,* 180 Conn. 355, 429 A.2d 890 (1980). Thus, the Supreme Court of Connecticut considered the Government's taking of a constructive easement over plaintiff's property worthy of compensation under the Fifth Amendment.

vised Statutes Annotated section 558–A(6) constitutes property for purposes of the Fifth Amendment.

## B. "TAKING" UNDER THE FIFTH AMENDMENT

By ordering Plaintiffs to remove twenty feet from their wharf, the Army Corps' order requires Plaintiffs to give up their property right in the land underneath that portion of the wharf. This Court must examine the interplay between federal and state control of the underwater land to determine whether, in fact, there was any "taking" at all, and, if so, whether such taking is constitutionally permissible.

### 1. THE FEDERAL GOVERNMENT'S AUTHORITY

■ It has long been settled that Congress, under the Commerce Clause, has extensive authority over the country's waters. *Kaiser Aetna v. United States,* 444 U.S. 164, 173, 100 S.Ct. 383, 389, 62 L.Ed.2d 332 (1979). As early as 1824, the Supreme Court held that the power to regulate commerce necessarily includes power over navigation. *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824). The Supreme Court elaborated upon the nature of Congress's regulatory power over national waters in *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 426–27, 61 S.Ct. 291, 308, 85 L.Ed. 243 (1940), writing:

> It cannot properly be said that the constitutional power of the United States over its waters is limited to control for navigation.... In truth the authority of the United States is the regulation of commerce on its waters. Navigability ... is but a part of this whole.... The point is that navigable waters are subject to national planning and control in the broad

regulation of commerce granted the Federal Government.

Thus, the federal government may exercise control over navigable waterways via the Commerce Clause.

### a. THE ARMY CORPS' AUTHORITY

■ Under the Commerce Clause, Congress has delegated the authority to regulate navigable water to the Army Corps under section 10 of the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403.[7] Under Title 33 Code of Federal Regulations section 330.1, the Army Corps has the authority to issue nationwide permits. Title 33 Code of Federal Regulations section 330.1(d) specifically gives the Army Corps' district and division engineers "discretionary authority" to modify, suspend, or revoke these permits *"for any factor in the public interest."* 33 C.F.R. § 330.1(d) (1992) (emphasis added). Hence, the Army Corps has very broad powers to modify, suspend, or revoke nationwide permits. Furthermore, there is no administrative appeal regarding any final decision for a permit application or modification if such decision is made in accordance with the governing regulations (33 C.F.R. §§ 320–330). 33 C.F.R. § 320.1(a)(2) (1992).

■ In the case at bar, the Army Corps issued the Donnells a nationwide permit in 1984 to operate Varrell Wharf in navigable waters. As of August 19, 1992, the Army Corps revoked such permit until the Donnells removed the requested twenty feet of wharf. In its August 1992 notice to the Donnells, the Army Corps' specifically notes that its revocation of the Donnells' permit is "in the public interest." (*See* Exhibit D, attached to Plaintiff Daniel Donnell's Affidavit in Support of Plaintiffs' Motion for Summary Judgment (Docket No. 17)). There is neither argument nor evidence that the Gov-

---

7. Title 33 United States Code section 403 provides in relevant part:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States, is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier ... or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States ...

> except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army.

33 U.S.C. § 403 (1992). In the case at bar, the navigable water surrounding Varrell Wharf is, thus, subject to regulation by the Army Corps which is why the Donnells need a nationwide permit for the operation of their wharf in these waters.

ernment did not act in accordance with applicable regulations in revoking Plaintiffs' nationwide permit and demanding compliance with its removal orders. Thus, under the regulations governing the Army Corps, the Government's orders are both enforceable and nonreviewable.

### 2. THE STATE'S AUTHORITY

 Despite the federal government's broad areas of control, the States retain considerable power over submerged lands. In fact, it is the states who exercise authority over the land beneath the waters, although this authority is subject to the federal government's control for purposes of navigation and commerce. *See Appalachian Electric Power Co.,* 311 U.S. at 423–24, 61 S.Ct. at 306–07; *United States v. Kane,* 602 F.2d 490, 494 (2d Cir.1979).

 In Maine, lands submerged beneath the ocean and tidal rivers of the state are held in trust for the public by the state. Op. Atty. Gen., June 2, 1982. Under the public trust doctrine, the United States Supreme Court has established that "the individual states have the authority to define the limits of the lands held in public trust and to recognize private rights in such lands as they see fit." *Phillips Petroleum Co. v. Mississippi,* 484 U.S. 469, 475, 108 S.Ct. 791, 794, 98 L.Ed.2d 877 (1988). Maine may properly give property rights to land submerged under private structures in the water to the private structure owner; however, these state property rights remain subject the federal government's control for purposes of navigation and commerce.

### 3. THE INTERPLAY BETWEEN FEDERAL AND STATE INTERESTS

 In this case, there is a conflict between the Plaintiffs' state-created property right and the Army Corps' order regarding the same property. The conflict between state-created property rights and the federal government's powers under the Commerce Clause have resulted in the navigational ser-

vitude doctrine. The term "navigational servitude" expresses the notion that the public's right of navigation supersedes any claim of private ownership. *See United States v. Cress,* 243 U.S. 316, 320, 37 S.Ct. 380, 382, 61 L.Ed. 746 (1917). This "dominant servitude" has been described as "the privilege to appropriate without compensation which attaches to the exercise of the 'power of the government to control and regulate navigable waters in the interest of commerce.'" *Virginia Electric & Power Co.,* 365 U.S. at 627–28, 81 S.Ct. at 787–88 (quoting *United States v. Commodore Park, Inc.,* 324 U.S. 386, 390, 65 S.Ct. 803, 805, 89 L.Ed. 1017 (1945)). This power "is a dominant one which can be asserted to the exclusion of any competing or conflicting one." *Virginia Electric & Power Co.,* 365 U.S. at 628, 81 S.Ct. at 788 (quoting *United States v. Twin City Power Co.,* 350 U.S. 222, 224, 76 S.Ct. 259, 260, 100 L.Ed. 240 (1956)). Thus, generally speaking, when the Government effects a taking in the exercise of its rights under the Commerce Clause, most often the Government is not required to reimburse the property owner for the taking as a result of the federal navigational servitude. *Kaiser Aetna,* 444 U.S. at 175, 100 S.Ct. at 390.[8]

The Supreme Court's analysis in the 1987 case, *United States v. Cherokee Nation of Oklahoma,* 480 U.S. 700, 107 S.Ct. 1487, 94 L.Ed.2d 704 (1987), is particularly illuminating as applied to the issues at bar. In that case, the Supreme Court addressed the question whether the Government must pay the Cherokee Nation compensation for damages to riverbed interests caused by navigational improvements made by the Government on the Arkansas River, given the tribe's fee simple title to the riverbed underlying portions of the river. In rejecting the tribe's takings claim, the Court explained:

> [T]here can be no doubt that 'the Commerce Clause confers a unique position upon the Government in connection with navigable waters.' ... It gives to the Federal Government 'a dominant servitude' which extends to the entire stream

---

8. This Court notes that the Supreme Court has never held that navigational servitude creates a blanket exception to the Takings Clause whenev-

er Congress exercises its Commerce Clause authority to promote navigation. *Kaiser Aetna,* 444 U.S. at 172, 100 S.Ct. at 389.

and the stream bed below ordinary high-water mark. *The proper exercise of this power is not an invasion of any private property rights in the stream or the lands underlying it, for the damage sustained does not result from taking property from riparian owners within the meaning of the Fifth Amendment but from the lawful exercise of a power to which the interests of riparian owners have always been subject.'*

*Id.* at 704, 107 S.Ct. at 1489–90 (emphasis added) (citations omitted). Thus, the Court explained that no taking could be found because the private property right was always subject to the exercise of control by the federal government.

 Under the takings analysis as framed in *Cherokee Nation,* it is clear that no taking has occurred in the instant case because the Donnells' constructive easement over the land underneath their wharf has *always* been held subject to the federal government's control regarding navigation pursuant to the Commerce Clause. The Army Corps has always retained both the power and the right to modify, suspend, or revoke Plaintiffs' nationwide permit as necessary "in the public interest." 33 C.F.R. § 330.1(d) (1992). Thus, the Army Corps' suspension of Plaintiffs' nationwide permit to operate in navigable waters, contingent upon their removal of twenty feet of pilings, trumps the Donnells' state-created property right in the land under Varrell Wharf, nullifying any taking that may have occurred.

For the aforementioned reasons, the Army Corps' orders to the Donnells to remove twenty feet of pilings from their wharf is constitutionally permissible and cannot constitute a "taking" for purposes of the Fifth Amendment as a matter of law. Hence, Plaintiffs' Motion for Partial Summary Judgment will be denied and judgment will be entered in favor of Defendants on Count II.

Accordingly, it is *ORDERED* that Plaintiffs' Motion for Partial Summary Judgment on Count II be, and it is hereby, *DENIED.* It is *FURTHER ORDERED* that judgment be entered for the Defendants on Count II as a matter of law. In addition, it is *ORDERED* that:

1) Plaintiffs' Motion to Strike Defendants' Response to Plaintiffs' Statement of Undisputed Facts is hereby *GRANTED* as it relates to Defendants' requested additions and substitutions;

2) Plaintiffs' Motion to Strike Defendants' Statement of Undisputed Facts is hereby *DENIED;*

3) Defendants' Motion for Partial Summary Judgment is hereby *DENIED;* and

4) Defendants' Motion for Leave to File an Amended Response to Plaintiffs' Statement of Undisputed Facts is hereby *DENIED.*

So *ORDERED.*