**ARKANSAS NATURE ALLIANCE, INC., Plaintiff,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS; Colonel Benjamin Butler, District Engineer, Little Rock District, Corps of Engineers, Defendants.**

**No. 1–02–CV00037–WRW.**

United States District Court,
E.D. Arkansas,
Northern Division.

March 17, 2003.

---

Richard H. Mays, Michelle Lee Davenport, Richard H. Mays Environmental Legal Services, Little Rock, AR, for Arkansas Nature Alliance, Inc., An Arkansas Not–For–Profit Corporation.

E. Fletcher Jackson, U.S. Attorney's Office, Eastern District of Arkansas, James W. Cullum, U.S. Army Corps of Engineers, Little Rock, AR, for Department of Defense, United States Army Corps of Engineers, Benjamin Butler, Colonel, District Engineer, Little Rock District Corps of Engineers.

## POSTJUDGMENT ORDER

WILSON, District Judge.

On February 28, 2003, I granted summary judgment in this case for the Plaintiff and entered judgment consistent with that order.[1] Paragraph 9 of the remedy portion of the Order directed all parties to notify the Court within five (5) days from entry whether additional orders were required to implement the remedial provisions of the Order. The Corps and the Developer Intervenors requested an extension of time up to and including February 25, 2003. With no objection from Plaintiff, the extension was granted.[2] This Order addresses the issues raised in those filings.[3] Additionally, Developer Intervenors filed a Motion for Clarification and Amendment of the Order.[4] This Order also disposes of that Motion.

Plaintiff's letter of February 19, 2003, informs the Court that there are no binding time-frames contained in the Corps' administrative permitting process. While the Order requires that it be done in an expeditious manner, and that quarterly reports of implementation be submitted, the Plaintiff suggests a general time-frame of not more than nine months. Plaintiff further suggests that failing completion of the process during the time-frame, or in the absence of good cause shown by the Corps for exceeding the time-frame, the bridge should be restored to its original low-water dimensions. The Corps' response of February 24, 2003, does not object to a deadline.

I note an objection to a time-frame from the Developer Intervenors in their letter of February 20, 2003. I am not convinced that the Developer Intervenors have standing on that issue, and, in any event, since it is the Corps that must conduct the

1. Docket Nos. 34 and 35.

2. Docket No. 37.

3. Letter Plaintiff, 02/19/03; Letter Intervenors, 02/20/03; Letter Corps, 02/24/03; Letter Plaintiff, 03/13/03.

4. Docket No. 39.

permitting process, and it has no objection to the time-frame proposed, a time-frame seems reasonable. I order the following:

1. I direct that the time-frame for the permitting process be nine months from the entry of this Order. In the event the process is not complete, absent good cause shown by the Corps, the bridge will be returned to its original low-water dimensions. This language will be included in paragraph 2 of the remedy.[5]

■ Next, Plaintiff's letter of February 19, 2003, asks this Court to enjoin the use of the bridge and further work on development of Landers Island during the permitting process. In their February 20, 2003 letter, the Developer Intervenors object to enjoining use of the bridge but assure the Court they are mindful of the Court's Order. The Corps, in its February 24, 2003 letter, objects to an injunction that would cut residents from their homes and agrees to monitor the caution signs. After reviewing these suggestions and objections, I order the following:

2. The Developer Intervenors and current residents may continue to use the bridge. All further development on the Landers Island is enjoined pending the completion of the permitting process. This language will be added to paragraph 5 of the remedy.

■ Finally, the Developer Intervenors, in both their letter of February 20, 2003, and their Motion for Clarification, ask me to clarify whether my Order mandates an Environmental Impact Statement ("EIS") or whether the Court has simply ordered the permitting process that would allow only an Environmental Assessment ("EA"). Plaintiff's letter response to the Developer Intervenors' Motion for Clarifi-

cation states that it believes the Order correctly remands the case without specifying any particular procedure. Plaintiff further states that, in this case, the Corps could conceivably choose to perform only an EA. Plaintiff then guarantees a challenge to such an action if it requires a Finding of No Significant Impact. The Corps has not given me a hint as to whether it reads my Order to require an EIS and has certainly not objected to doing one or argued in response in any manner. I would be mystified if, on this record, and with the promise of future challenge from the Plaintiff, the Corps would be so short-sighted. The Corps has not presented the Court with any authority to convince me I cannot order that the permitting process include an EIS. While I do not believe the Developer Intervenors have standing on this issue, they have provided no authority to be considered in their request for clarification. With these facts in mind, I order the following:

3. The permitting process used by the Corps is to include an EIS. The Corps has five (5) days from entry of this Order to demonstrate just cause why it should not do so. This language will be added to paragraph 2 of the remedy.

Finally, I turn to the Developer Intervenors' Motion for Clarification/Amendment of Order and Judgment brought under Fed.R.Civ.P. 60.[6] That Motion is GRANTED in part and DENIED in part. The Developers first argue that it would be premature to order an EIS should the Corps decide to conduct only an EA. They provide me no authority for this proposition. In any event, the issue is moot as I have already decided it.

---

**5.** An Amended Order will be filed to reflect all changes and amendments prior to publication of the Order.

**6.** Docket No. 39.

Next, the Developers request that certain clerical and/or typographical errors within the Order be corrected. I always appreciate the opportunity to correct mistakes and take this opportunity to do so. I will address each suggestion separately.

(A) Developer Intervenors request that the reference to the subdivision as "Eagle's Nest" on page 2 and page 6 be changed to "Eagle's Landing." While the Administrative Record does contain a reference to Eagle's Nest, I have no objection to the suggested change for purposes of consistency. Those changes will be made in the Amended Order.

(B) Developer Intervenors point out an error on page 4 and request that the date be changed from October 12, 2002, to October 12, 2000, to accurately reflect the date in the Administrative Record (AR 81). Consider it done.

(C) Developers point to an error on page 6, and suggest that the date of October 16 be changed to reflect October 12 as above. A check of the Administrative Record reflects that the date is October 11, 2000. The date will be changed and footnote 21 will be corrected to reflect AR 82.

(D) Page 9 of the Order states: "Following complaints about the size and nature of the work, inspection revealed that the crossing was built three (3) feet higher than the permit authorized." The Developer Intervenors' Motion does not quarrel with the accuracy of this statement but simply says, in the interest of completeness, it should be noted that the Developers lowered the bridge to the authorized height. I do not think a change in the Order is necessary, particularly since I made a finding that the record did not reflect how much the Developers spent remedying their mistake.

(E) Developer Intervenors point to an error on page 23 and state that the date

November 16, 2002, should be November 16, 2000. They are correct, and the date will be changed. However, the request that the record cite be AR 84 must be denied, as the AR 56 cite is correct.

(F) Developer Intervenors state that page 30 of the Order indicates that the Developers closed on the purchase on or about January 2, 2001, and that the LOP and the NWP were not issued "until a year later January 22, 2001." They request that the Order be changed to reflect that the LOP and the NWP were issued twenty days after closing, and not one year. The Developers misread the Order. The year later is a reference to the time between the entry into the contract for sale and the permit date. I stick with my finding that it is clear that the purchase of the land was not made in reliance on the LOP or any other type of permit. The request to change page 30 of the Order is denied.