# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1289

_____

Ripplin Shoals Land Company, LLC    *
                                             *
            Appellant,                      *
                                             *    Appeal from the United States
      v.                                    *    District Court for the
                                               *    Eastern District of Arkansas.
United States Army Corps of Engineers; *
Wally Z. Walters, Colonel, District       *
Engineer, Little Rock District,          *
Corps of Engineers,                   *
                                               *
            Appellees.                 *

_____

Submitted:  October 10, 2005
Filed:  March 17, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Ripplin Shoals Land Company, LLC ("RSLC") brought suit against the United States Army Corps of Engineers ("the Corps"), requesting declaratory and injunctive relief. The district court dismissed RSLC's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), stating that its prior orders in the separate but somewhat related case of *Arkansas Nature Alliance, Inc. v. United States Army Corps of Engineers*, No.

02-00037 (E.D. Ark. filed Apr. 9, 2002), had preclusive effect and barred the instant action. We reverse and remand for further proceedings.[1]

## I. *Facts*

We accept as true all facts alleged in the complaint. RSLC, the developer of Landers Island on the White River, desired improved access to enable development of the island for recreation and vacation homes. RSLC applied to the Corps for a permit to add to an already existing low-water bridge. The Corps issued a Letter of Permission ("LOP") to allow the proposed changes. After receiving the LOP, RSLC constructed the improved low-water bridge and began developing a 49-lot subdivision on Landers Island. Thereafter, an environmental group, the Arkansas Nature Alliance, sued the Corps, challenging the LOP issued to RSLC, claiming a violation of the National Environmental Policy Act ("NEPA"). *Arkansas Nature Alliance, Inc. v. United States Army Corps of Engineers*, No. 02-00037 (E.D. Ark. filed Apr. 9, 2002). RSLC moved to intervene. The district court allowed RSLC to intervene, as the developers, for remedial issues and to participate in all further proceedings in which they had an interest.

In *Arkansas Nature Alliance*, the district court found that the Corps' issuance of the LOP to modify the existing low-water bridge was not reasonable and ordered the Corps to revoke it. The district court ordered the Corps to "address the original application under the full permit process regulation and NEPA regulation, which requires the preparation of the proper environmental documents . . . ." The district court also directed that the bridge be returned to its original dimensions. As intervenors, RSLC filed a motion for clarification, asking whether an Environmental Impact Statement ("EIS") was necessary in the permitting process. The district court entered an order specifically stating that the permitting process used by the Corps was to include an EIS.

---

[1]RSLC only appeals the dismissal of Count I of its complaint.

Rather than continue with its plans, RSLC decided to withdraw its application to improve the already existing low-water bridge, which was the subject of the *Arkansas Nature Alliance* litigation. Instead, RSLC submitted a new application that described an entirely new span bridge design. RSLC asked the Corps to authorize the span bridge under the Nationwide Permit Process ("NWP").[2] Thereafter, RSLC removed the improvements to the existing low-water bridge and returned the structure to its original low-water dimensions.

RSLC submitted a new permit application to the Corps, requesting approval for construction of a span bridge pursuant to Nationwide Permit 14 for Linear Transportation Crossings ("NWP14"). Before processing RSLC's new span bridge application, the Corps sought relief under Fed. R. Civ. P. 60(b)(5) from the order in the *Arkansas Nature Alliance* case, which required an EIS for the prior low-water bridge modifications. The district court denied the Corps' motion.

Relying on the district court's order regarding the Corps' Rule 60(b)(5) motion, the Corps advised RSLC that a Nationwide Permit could not be issued and that the project would require a full public interest review, including an EIS to be prepared by a third party contractor selected by the Corps at RSLC's expense. Specifically, the Corps stated "[a]s directed by the court's order, your request for a span bridge to Lander's Island cannot be issued through the Corps of Engineer's Nationwide Permit Program." The Corps instructed RSLC that it had 15 days to respond to these requirements or its application would be withdrawn.

RSLC objected to the Corps' approach, arguing that the Corps' regulations require a review of the span bridge application for eligibility under NWP14 apart from any prior consideration of the low-water bridge application. Further, RSLC stated that

---

[2]The NWP provides a procedure for abbreviated review of projects deemed to have minimal environmental impacts. If approved under the NWP, RSLC's new project would avoid the expense of an EIS.

because the Corps had not made a final decision on the span bridge and, thus, had no administrative record, the *Arkansas Nature Alliance* court had no jurisdiction to make decisions regarding the span bridge application. The Corps then notified RSLC of its final agency action on the pending span bridge application, stating "your application has been officially withdrawn and the permitting evaluation process has been closed." RSLC filed the instant action to compel the Corps to proceed on its application for a span bridge under the NWP. The Corps filed a motion to dismiss pursuant to Rule 12(b)(6). The district court granted the Corps' motion, stating that its prior orders in the *Arkansas Nature Alliance* case barred the instant action under the doctrines of res judicata and collateral estoppel.

## II. *Discussion*

RSLC contends that the district court erred in dismissing its complaint pursuant to Rule 12(b)(6), arguing that the district court's prior decisions in *Arkansas Nature Alliance* have no preclusive effect on RSLC's right to have its new permit application for a different project reviewed for verification under the NWP. RSLC maintains that the *Arkansas Nature Alliance* court had no jurisdiction to rule on future permit decisions by the Corps based upon new applications.

Moving to the merits of the case, RSLC argues that, as a matter of law, the Corps must review each incoming application for NWP verification, and in refusing to do so in this case, the Corps violated its own regulations. RSLC avers that the Corps' argument that it has discretion to deny any Nationwide Permit application is disingenuous. The district court relied on the Corps' discretionary argument, claiming that even if it were to reach the merits of RSLC's claims, the conclusion would be the same. However, the Corps admitted that it was coerced by the district court to adopt its advisory opinion rather than rely on the information in the administrative record. In fact, in the Corps' letter to RSLC regarding its decision on the span bridge, the Corps stated that "[a]s directed by the court's order, your request for a span bridge cannot be issued through the Corps of Engineer's Nationwide Permit Program." This

statement illustrates that the Corps never deferred to the discretion of the District Engineer. For these reasons, RSLC urges this court to reverse the judgment of the district court and remand this case for further proceedings.

The Corps responds by stating that res judicata and collateral estoppel preclude RSLC from re-litigating the requirements necessary for approval of a Corps permit regarding a bridge to Landers Island. Moreover, the Corps claims that the issuance of a Nationwide Permit is at the discretion of the District Engineer, and he is authorized to set the same requirements as imposed by the district court. In the alternative, the Corps maintains that even if res judicata and collateral estoppel did not apply, this lawsuit is unfounded.

The Corps states that permit applicants are not entitled to a Nationwide Permit as a matter of right. As long as there is reason to believe that there is public dissent to the proposed project, the District Engineer has the discretion to require the applicant to go through the individual permit application process.[3] Further, the Corps argues that it can rely on the prior order of the district court in exercising its discretion on whether

---

[3]33 C.F.R. § 330.1(d)--Nationwide Permit Program—states in relevant part:

Discretionary Authority. District and division engineers have been delegated a discretionary authority to suspend, modify, or revoke authorizations under an NWP. This discretionary authority may be used by district and division engineers only to further condition or restrict the applicability of an NWP for cases where they have concerns for the aquatic environment under the Clean Water Act section 404(b)(1) Guidelines or for any factor of the public interest. . . . If the DE [District Engineer] finds that the proposed activity would have more than minimal individual or cumulative net adverse effects on the environment or otherwise may be contrary to the public interest, he shall modify the NWP authorization to reduce or eliminate those adverse effects, or he shall instruct the prospective permittee to apply for a regional general permit or an individual permit.

a Nationwide Permit is appropriate. The Corps claims that in this case, as was shown from the earlier lawsuit, there was public dissent against the project, not only because of the form of the low-water bridge, but also because of the cumulative impacts of constructing a subdivision on a low-lying island in the middle of the White River. These concerns did not change between the end of the original lawsuit and the time RSLC filed its application for a span bridge. The Corps posits that regardless of what the district court said in its Rule 60(b) ruling, the District Engineer would have been negligent to ignore the possible cumulative impacts and public opinion against the bridge. In sum, the Corps urges this court to affirm the district court's dismissal of RSLC's action based on res judicata and collateral estoppel.

We review de novo the district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6), taking all facts as alleged in the complaint as true. *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 937 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Ernst & Young, LLP*, 395 F.3d 851, 853 (8th Cir. 2005). Both res judicata and collateral estoppel have the impact of foreclosing future litigation based upon factors found to exist in past but related litigation. Upon review, we find that neither the doctrines of res judicata nor collateral estoppel preclude RSLC from pursuing its complaint against the Corps.

## A. *Res Judicata*

RSLC contends that res judicata does not bar its claim because its claim did not exist when the first suit was litigated. RSLC submits that the Corps could not have denied an application that did not exist; thus, res judicata, or claim preclusion, cannot apply. Further, there were no claims presented in the previous litigation between RSLC and the Corps, and no claims between RSLC and the Corps were resolved in *Arkansas Nature Alliance*. Lastly, because RSLC's span bridge application was neither submitted to nor denied by the Corps at the time of the first case, RSLC had no opportunity to litigate the issue. In response, the Corps states that res judicata applies to those in privity with the parties in the litigation. In the district court's February 14,

2003, *Arkansas Nature Alliance* decision, it allowed RSLC's predecessors in interest to intervene in the litigation and become subject to that decision and any future orders. When considering whether to proceed under the NWP for the span bridge, the Corps sought clarification from the district court in its Rule 60(b) motion, and the district court held, in effect, that an EIS was required. The Corps argues that it was representing the interests of RSLC in filing its Rule 60(b) motion. Moreover, RSLC filed a brief in support of the Corps' argument. Thus, the Corps posits that RSLC had a full and fair opportunity to litigate the issue in the previous case.

Res judicata applies to prevent repetitive suits involving the same cause of action. *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001). "Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action." *Id.* There are three elements this court must consider to determine whether res judicata will bar a party from asserting a claim: (1) whether the prior judgment was entered by a court of competent jurisdiction; (2) whether the prior decision was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. *Id.* "If the three elements are met, the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Id.* (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948)). However, res judicata does not apply to claims that did not exist when the first suit was filed. *Id.*

We agree with RSLC that res judicata does not act to bar its claims against the Corps in the instant lawsuit. First, while the prior judgment in *Arkansas Nature Alliance* was entered by a court of competent jurisdiction, the district court did not have the authority to issue what was, in essence, an advisory opinion on any separate future applications filed by RSLC, i.e., RSLC's span bridge application. "One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts." *Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932

(8th Cir. 2005) (internal quotations and citations omitted). Article III limits the federal courts to deciding "Cases" and "Controversies" and, thus, prohibits the district court from issuing advisory opinions. *Id*. Moreover, the controversy must be live when the court decides the issues. *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990). Here, when the Corps sought what was essentially an advisory opinion when it filed its Rule 60(b) motion, it sought clarification on an issue that was never before the district court in the *Arkansas Nature Alliance* case, i.e., an entirely new span bridge. Therefore, any opinion given by the district court was no more than advisory.

Second, the prior decision in *Arkansas Nature Alliance* was not a final decision on the merits of RSLC's span bridge application. In fact, RSLC's span bridge application did not exist at the time of the district court's final decision on the merits. "'It is well settled that claim preclusion [res judicata] does not apply to claims that did not arise until *after* the first suit was filed.'" *Lundquist*, 238 F.3d at 977 (quoting *Baker Group, L.C. v. Burlington Northern & Santa Fe Ry Co.*, 228 F.3d 883, 886 (8th Cir. 2000)) (emphasis in original). Lastly, the same cause of action is not involved in both cases. The *Arkansas Nature Alliance* case involved a cause of action by an environmental group against the Corps for issuing the LOP to RSLC for improvements to an existing low-water bridge. The district court held that those improvements were not reasonable and ordered RSLC to return the existing low-water bridge back to its original dimensions. The district court specifically stated, "I order the Corps and the individual Defendant to address the *original application* under the full permit process regulations and NEPA regulations, which require the preparation of the proper environmental documents, public notice, and hearing." (emphasis added). RSLC complied with that order. The instant case was brought by RSLC to compel the Corps to consider its *new* span bridge application under NWP14. This span bridge application was submitted after, and as an alternative to, the low-water bridge modifications addressed in the *Arkansas Nature Alliance* case. Consequently, the causes of action are different. Because the same cause of action is not at issue in these

two cases, we find that res judicata does not bar RSLC from pursuing the instant cause of action against the Corps.

## B. *Collateral Estoppel*

RSLC asserts that collateral estoppel should not bar the instant action because the issues here are not identical to those in *Arkansas Nature Alliance*. In fact, the district court did not specify the issue(s) it believed were being relitigated for purposes of applying collateral estoppel. Further, the issues raised by the Corps' Rule 60(b) motion in *Arkansas Nature Alliance* are not identical to those issues in this case. At the time of the Rule 60(b) motion, the Corps had not determined the RSLC span bridge permit issue, and no administrative record had been compiled. RSLC argues that the Corps was asking the *Arkansas Nature Alliance* court to give an advisory opinion about a hypothetical future action. RSLC states that the Corps cannot abdicate its substantive decision-making duty by asking a court for advice. In that same vein, RSLC posits that district courts cannot advise federal agencies, they can only review final agency actions. RSLC also claims that it was not allowed a full and fair opportunity to be heard on the issues presented by this case; no such review was possible at the time because there was no final agency action.

The Corps responds by claiming that collateral estoppel prevents re-litigation of issues actually litigated in a prior lawsuit. The Corps states that even though RSLC was not a named party in the *Arkansas Nature Alliance* litigation, its interests were represented by the Corps, and RSLC was granted intervenor status. The arguments being made now by RSLC are the same that were made in the Corps' Rule 60(b) motion, i.e., that the plans have substantially changed and an individual permit, including an EIS, should not be required. The requirement of an EIS before the Corps can authorize RSLC to provide access to the island has been litigated and decided.

We apply the doctrine of collateral estoppel when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in

a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir. 1989) (citing *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 356 (8th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985)). In assessing this issue de novo, we address the four-element analysis seriatim.

First, the issue sought to be precluded is not identical to the issue previously decided. The previous issue concerned RSLC's LOP to improve the existing low-water bridge. The current issue of RSLC's new span bridge application submitted to the Corps was not before the district court in the *Arkansas Nature Alliance* case. Second, as stated above, the prior action did not result in a final adjudication on the merits of the instant action. The prior action resulted in a final adjudication on the merits of RSLC's LOP to improve the already existing low-water bridge but not as to the construction of a new span bridge. Concerning the third factor, there is no dispute that RSLC was a party in the *Arkansas Nature Alliance* case because of its intervention.

Lastly, RSLC was not given a full and fair opportunity to be heard on the issue of its span bridge application in the prior action. The Corps had neither approved nor rejected RSLC's span bridge application when it filed the Rule 60(b) motion before the district court. And after the district court's ruling on the Rule 60(b) motion, the Corps cited the district court as its reason for refusing to allow the span bridge application to proceed under the NWP. We decline to rely on the fact that the District Engineer could have exercised his discretion and denied RSLC's permit, as argued by the Corps and the district court, because the District Engineer did not exercise his discretion in this case; the permit was denied as a direct result of the district court's advisory opinion. Thus, RSLC was not given a full and fair opportunity to litigate this issue before the district court. This case is unique and our holding does not establish any general right to litigate the Corps' decision to deny NWP authorization. The Corps

may yet deny RSLC's span bridge application for treatment under NWP14, but, on this record, RSLC is nonetheless entitled to having the Corps decide the application on its own merits.

Based on the foregoing de novo analysis, we conclude that the district court erred in granting the Corps' motion to dismiss pursuant to Rule 12(b)(6). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

While I agree with the majority as to the Corps' interpretation of its regulations requiring it to evaluate all incoming applications for NWP eligibility, I respectfully dissent as this case is not ripe for judicial review at this juncture. I also dissent because the Corps was within its authority to deny the NWP authorization and require an environmental impact statement (EIS), irrespective of the district court's earlier decision in Arkansas Nature Alliance, Inc. v. United States Army Corps of Engineers, 266 F. Supp. 2d 876 (E.D. Ark.), modified, 266 F. Supp. 2d 895 (E.D. Ark. 2003).

## I. *Ripeness*

Before reaching a decision as to the merits of RSLC's challenges to the district court's opinion on res judicata and collateral estoppel grounds, we should determine whether we have jurisdiction. Indeed, we have an obligation to raise jurisdictional issues sua sponte "when there is an indication that jurisdiction is lacking." Thomas v. Basham, 931 F.2d 521, 522-24 (8th Cir. 1991); see also James Neff Kramper Family Farm Partnership v. IBP, Inc., 393 F.3d 828, 830 (8th Cir. 2005). RSLC is essentially challenging the Corps' determination it must produce an EIS. Ripeness concerns inhere in challenges raised prior to a final determination of an applicant's individual permit application. Upon review, I conclude this case is not ripe for judicial review and we lack jurisdiction. See Pub. Water Supply Dist. No. 8 v. City

of Kearney, 401 F.3d 930, 932 (8th Cir. 2005) (concluding ripeness is a jurisdictional challenge).

Where there is no final agency action, a claim in federal court challenging the agency's action is not ripe for review. See Lane v. United States Dep't of Ag., 187 F.3d 793, 795 (8th Cir. 1999). The Corps, in its Motion to Dismiss, claims "[t]here is a reviewable agency action as evidenced by Exhibits Q, R, and S to the Amended Complaint." The documents to which the Corps refers are letters informing RSLC its application for NWP authorization is denied and how to proceed for an individual permit application. The documents also establish RSLC failed to produce timely the information requested by the Corps and, as a result, the Corps considered RSLC's individual permit application withdrawn. The documents inform RSLC if it wishes to submit the requested information, it can do so at a later date. These documents therefore constitute a denial without prejudice of RSLC's span bridge individual permit application.[4]

A denial of an authorization under the NWP program is not the end of a permit application. Rather, once a proposed project is denied under the NWP program, it is reviewed for authorization under the individual permit program. See 33 C.F.R. § 330.1(c), (f); 33 C.F.R. §§ 320.1(c), 325.5. Accordingly, a denial of an authorization under the NWP program does not conclusively determine the disputed issue and therefore cannot constitute a "final agency action" ripe for judicial review. See Lotz Realty Co. v. United States, 757 F. Supp. 692, 696 (E.D. Va. 1990); Inn of

---

[4] Exhaustion of administrative appeals is a prerequisite to filing a lawsuit in federal court. 33 C.F.R. §§ 331.12, 331.10. Where no administrative appeal process exists for a final agency action, the action is reviewable in federal court if it constitutes a "final agency" decision. 5 U.S.C. § 704. Here, there is no right to administratively appeal the denial of an application for NWP authorization. See 33 C.F.R. §§ 320.1(a)(2), 320.4(j), 331.2, 325.5(b). Accordingly, our jurisdiction to review the action depends upon whether the action was final.

Daphne v. United States, No. Civ.A. 97-0796-BH-S, 1998 WL 34024732, at *4-6 (S.D. Ala. Aug. 26, 1998) (unpublished); see also Indus. Hwy. Corp. v. Danielson, 796 F. Supp. 121, 126-30 (D.N.J. 1992); Avella v. United States Army Corps of Eng'rs, No. 89-10064-CIV-KING, 1990 WL 84499 (S.D. Fla. Jan. 22, 1990), aff'd, 916 F.2d 721 (11th Cir. 1990) (both unpublished); cf. Donnell v. United States, 834 F. Supp. 19, 25 (D. Me. 1993) (noting that no administrative appeal is authorized for use of discretionary authority to modify, suspend, or revoke an NWP).

The letter informing RSLC its application for an individual permit had been withdrawn does not constitute a final agency action. "District engineers will decide on all applications not later than 60 days after receipt of a complete application, unless . . . (iv) [a] timely submittal of information or comments is not received from the applicant." 33 C.F.R. § 325.2(d)(3)(iv). If timely submittal of requested information is not received,

> [t]he applicant will be given a reasonable time, not to exceed 30 days, to respond to requests of the district engineer. The district engineer may make such requests by certified letter and clearly inform the applicant that if he does not respond with the requested information or a justification why additional time is necessary, then his application will be considered withdrawn or a final decision will be made, whichever is appropriate.

Id. § 325.2(d)(5). In the instant case, the Corps decided to consider RSLC's application withdrawn as opposed to making a final decision on the application. Accordingly, no final decision was made on RSLC's application. This is made clear by the Corps' letter which states, "[t]he 15-day period to respond to our request for additional information has expired, therefore, your application has been officially withdrawn and the permitting evaluation process has been closed. Should you decide to submit the additional information required for a full public interest review please contact our office."

Indeed, the denial of a permit application resulting from an applicant's procedural default at the agency level is not properly reviewed by a federal court. See Lotz Realty Co., 757 F. Supp. at 696. In a substantially similar case, a project authorized under the NWP program was cancelled due to a procedural defect for failure to provide the Corps with requested information–a cancellation deemed by the reviewing court to be a non-final agency action. See Inn of Daphne, 1998 WL 34024732, at *6 ("The cancellation was not a denial, but a non-merits termination because of plaintiff's non-action. . . . [I]t is clearly not a final agency decision in the first instance.").

The public policy purposes underlying the ripeness doctrine should require us to conclude a denial of an authorization under the NWP program is not ripe for judicial review until the Corps has made a final determination regarding the applicants' individual permit. Any other approach would allow applicants to adjudicate the merits of an application twice, once under the NWP program, and again under the individual permit program. The ripeness doctrine as it relates to agency actions was designed to avoid such a situation. See Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs, 417 F.3d 1272, 1281 (D.C. Cir. 2005) ("[T]he notion that 'would-be dischargers' like the appellants nevertheless 'remain free to pursue an individual or general permit' suggests a ripeness . . . problem."). I cannot say RSLC's span bridge application would not be authorized under the individual permit program. Indeed, the Corps, although having significant discretion to require an EIS even where no EIS is otherwise required, has no discretion to deny an individual permit application unless the District Engineer finds the project would be contrary to the public interest. 33 C.F.R. §§ 320.4(a)(1), 323.6(b). Neither the Corps' withdrawal of the application due to RSLC's failure to follow administrative procedures nor the denial of an NWP application constitute a final agency action. I must therefore conclude this case is not yet ripe for judicial review.

## II. *Corps Authority*

In addition to the ripeness issue, I dissent from the majority as I believe the Corps was within its authority to deny approval under the NWP program and to require an EIS. I believe before we are called upon to address the res judicata and collateral estoppel issues, we should determine whether there exists a justiciable controversy. As the Corps was within its authority to deny NWP authorization and require an EIS, there is no justiciable controversy in existence.

### A. *Requirement to Evaluate Under NWP*

The regulation at issue does not mandate a conclusion the Corps is required to evaluate RLSC's span bridge application for NWP authorization. See 33 C.F.R. § 330.1(f) ("[District engineers] *should* review all incoming applications for individual permits for possible eligibility under regional permits or NWPs.") (emphasis added). The term "should," when used to direct agencies, is generally not considered a mandate, but permits an agency to retain some discretion over the matter. See United States v. Maria, 186 F.3d 65, 70 (2d Cir. 1999) ("[T]he common meaning of 'should' suggests or recommends a course of action, while the ordinary understanding of 'shall' describes a course of action that is mandatory."); see also In re Copper, 426 F.3d 810, 816 (6th Cir. 2005) ("If Congress had intended to leave . . . absolutely no discretion in the matter, it would have used the more mandatory phrase of 'shall be able' . . . [rather than 'may'].");  cf. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432 n.9 (1995) ("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'"). In evaluating the regulations governing NWP authorization in their entirety, there is no indication any meaning other than the common meaning was intended when the term "should" was used.

-15-

Nevertheless, the Corps has concluded it is required to evaluate all incoming applications for NWP eligibility pursuant to Crutchfield v. County of Hanover, Va., 325 F.3d 211, 219 (4th Cir. 2003) ("The governing regulations specifically require the Corps to 'review *all* incoming applications for individual permits for possible eligibility under . . . NWPs.'" (citing 33 C.F.R. § 330.1(f)). Given Crutchfield, this is a reasonable interpretation of the regulation and must be upheld.

## B. *Incoming Application*

Having determined the Corps' construction of the regulation requiring it to review all incoming applications for NWP authorization is reasonable, the question remains whether the span bridge application is an "incoming application." RSLC argues the span bridge application, though raised under the same permit number as the original application, involving a bridge traversing the same river for the same purpose (to provide ingress and egress to the same island) and according to the district court, resulting in similar drinking water impacts as the original application, was an "incoming application" requiring review by the Corps.

Neither party addressed why the application should be considered an incoming application as opposed to a revision of a prior application. The Corps in its filings in Arkansas Nature Alliance effectively indicated its belief the revised application constituted an "incoming application." Although the Corps claimed in Arkansas Nature Alliance it considered the application to be an "incoming application," the Corps appears to have treated the span bridge application as a revision to the previous application in the instant case. The Corps did not assign a new number to the span bridge application.[5] The district court concluded the "project is not new."

---

[5] Even if, as the majority asserts, the Corps failed to evaluate the span bridge application for NWP eligibility, this "failure" would support the conclusion the Corps considered the application to be merely a revision and not an "incoming application."

Although the Corps' position has been seemingly inconsistent throughout the history of RSLC's bridge applications, the Corps' position in <u>Arkansas Nature Alliance</u> would effectively preclude it from arguing a contrary position in this litigation. Therefore, while I have doubts the application is properly considered an "incoming" application, as I believe the Corps must be allowed to prevent game-playing by applicants, I believe the Corps' position in <u>Arkansas Nature Alliance</u> puts us in the awkward position of concluding, for purposes of the instant case only, the permit application is "incoming," and, based upon the Corps' interpretation of its regulations, must therefore be reviewed for NWP eligibility.

## C. *District Engineer Discretion*

The majority opines the Corps failed to review the span bridge application for eligibility under the NWP program because it believes the District Engineer did not exercise its discretion in denying the NWP authorization. Although the majority acknowledges the Corps did deny authorization under an NWP, it suggests the denial was invalid because it was not made by the District Engineer. This claim is based upon the Corps' letter denying the NWP authorization, which states, "[a]s directed by the court's order, your request for a span bridge cannot be issued through the Corps of Engineer's Nationwide Permit Program." The majority speculates because the reasoning of the letter is based upon the court's opinion, the District Engineer never exercised his or her discretion to deny the NWP authorization. I respectfully must disagree.

The majority mistakenly relies upon regulations granting the District Engineer "discretionary authority" for its conclusion the District Engineer must deny the application for NWP authorization. However, the regulations related to the District Engineer's "discretionary authority" all relate to its ability to modify, suspend, or

revoke an *existing* NWP or NWP authorization.[6] <u>See</u> 33 C.F.R. §§ 330.1(d), .2(g), .4(e). There is no existing NWP authorization in the instant case and the NWP has not been modified, suspended, or revoked. Accordingly, the authority upon which the majority relies is misplaced.

The District Engineer does "have authority to determine if an activity complies with the terms and conditions of an NWP." 33 C.F.R. § 330.4(b)(1). The only significant direction given to the Corps in denying activities under NWPs is: "[i]f the [District Engineer] decides that an activity does not comply with the terms or conditions of an NWP, he will notify the person desiring to do the work and instruct him on the procedures to seek authorization under a regional general permit or individual permit." 33 C.F.R. § 330.6(a)(2); <u>see also</u> 33 C.F.R. § 330.2(c). The Corps has implicitly interpreted this regulation as allowing the instant denial of RSLC's application for NWP authorization to be made by persons other than the District Engineer.

The regulations do not establish the District Engineer (1) must act in a particular manner to exercise properly his or her authority, (2) cannot delegate this authority, or (3) is vested with exclusive authority to deny an NWP authorization. Accordingly, although the regulations clearly contemplate denials of NWP authorizations can occur at the hands of the District Engineer, <u>see</u> 33 C.F.R. § 330.6(a)(1) (A District Engineer "should respond as promptly as practicable to [requests for confirmation that an activity complies with the terms and conditions of

---

[6] District Engineers modifying, suspending, or revoking NWP authorizations affect applicants' investments to a significant extent. Requiring District Engineers to follow particular procedures and safeguards in such a situation is necessary to protect properly applicants' investments. The same concerns, however, are not present when the project has not been constructed and the applicant is merely seeking confirmation that a proposed activity will comply with the requirements of an NWP.

an NWP].”), I cannot say the Corps' interpretation of the regulation is unreasonable.[7] Further, I cannot say the Corps acted arbitrarily or capriciously in denying RSLC authorization under the NWP program by letter from a lawyer as opposed to the District Engineer.[8]

## D. *Authority to Require EIS*

I further disagree with the majority as I believe the Corps was within its authority to require an EIS. RSLC's initial bridge application was authorized under NWP 14 by Letter of Permission on January 22, 2001. A Letter of Permission is used in lieu of more complex approval documents, such as records of decision, used to approve applicants providing an EIS, and statements of findings, used to approve applicants providing an EA. Letters of Permission are used to confirm authorization of applications under NWPs. Letters of Permission may only be used when "the proposed work would be minor, would not have significant individual or cumulative impacts on environmental values, and should encounter no appreciable opposition." 33 C.F.R. § 325.2(e)(1)(i).

---

[7] Indeed, the District Engineer's delegation of legal questions regarding res judicata and collateral estoppel to a lawyer seems eminently reasonable. Even if the district court erred in its res judicata and collateral estoppel analysis, and even if the Corps' lawyer erred in viewing the district court's order as having preclusive effect, the issue is close, and I cannot say the decision to require an EIS under the circumstances was arbitrary or capricious.

[8] The denial letter included instructions regarding the procedures RSLC must follow to apply for an individual permit. The only remaining issue raised by the majority is whether the District Engineer can base his decision to deny NWP authorization on a court order as opposed to a review of the administrative record. It would result in poor public policy to require a District Engineer to repeatedly review the administrative record even when a court had conclusively ruled on the issue. Accordingly, I find no reversible error.

-19-

The prior challenge to RSLC's bridge application and the guarantee by Arkansas Nature Alliance it would challenge a Finding of No Significant Impact establishes appreciable opposition to the span bridge application. See Ark. Nature Alliance, 266 F. Supp. 2d at 897. Accordingly, a Letter of Permission may not issue. Because the span bridge application is not eligible for consideration under 33 C.F.R. § 325.2(b), the standard permitting procedures must be followed. See 33 C.F.R. § 325.2(a).

The standard permit procedures require the preparation of an environmental assessment (EA) or EIS unless a categorical exclusion applies. 33 C.F.R. § 325.2(a)(4). A categorical exclusion is "a category of actions which do not individually or cumulatively have a significant effect on the human environment," 40 C.F.R. § 1508.4, and are either specifically listed under 33 C.F.R. pt. 325, app. B., para. 6, or can be authorized by Letter of Permission. 33 C.F.R. pt. 325, app. B., para. 6(5). NWPs are considered "categorical exclusions" because they qualify as Letters of Permission. See Md. Native Plant Soc'y v. United States Army Corps of Eng'rs, 332 F. Supp. 2d 845, 850 (D. Md. 2004). However, in the instant case, RSLC's proposed span bridge is not specifically listed under either 33 C.F.R. pt. 325, app. B., para. 6 or under 33 C.F.R. § 230.9, and does not qualify for a Letter of Permission. Accordingly, the standard permitting procedures require the span bridge application include an EA or EIS. See 33 C.F.R. § 325.2(a)(4) ("A decision on a permit application will require either an environmental assessment or an environmental impact statement unless it is included within a categorical exclusion."). "In those cases where it is obvious an EIS is required, an EA is not required. However, the district engineer should document his reasons for requiring an EIS." 33 C.F.R. pt. 325, app. B, para. 7.

Generally, an EA is first undertaken to determine whether adverse environmental impacts are sufficiently likely to warrant further study and documentation in the form of an EIS. See 40 C.F.R. §§ 1508.4, .9. However, this

procedure is not set in stone and the Corps can require an EIS instead of an EA. In doing so, however, "the district engineer should document his reasons for requiring an EIS" as opposed to an EA. 33 C.F.R. pt. 325, app. B, para. 7. In the Corps' letter dated February 27, 2003, revoking RSLC's Letter of Permission, the Corps relied upon the Arkansas Nature Alliance case to deny the NWP authorization and require an EIS. Given the similarity of the flooding and other impacts on Landers Island caused by increasing public access to the island identified by the district court, the Corps' decision to require an EIS is not arbitrary or capricious. See Ark. Nature Alliance, 266 F. Supp. 2d at 897 (requiring EIS), modifying 266 F. Supp. 2d at 890-92 (concluding the scope of the Corps' review of the bridge should include impacts on Landers Island).

Although the Corps is not entitled to deference in its interpretation of the district court's opinion, the Corps was required to follow its standard permitting procedures and request either an EA or an EIS. The Corps need only provide a reason why it requests an EIS as opposed to an EA. It did so in its letter dated February 27, 2003, when it relied upon the district court's opinion. The Corps followed its mandate and therefore, I cannot conclude the Corps' decision to require an EIS was arbitrary or capricious.

III. *Conclusion*

For the foregoing reasons, I respectfully dissent.

_____

-21-