BYE, Circuit Judge,
dissenting.
While I agree with the majority as to the Corps’ interpretation of its regulations *1045 requiring it to evaluate all incoming applications for NWP eligibility, I respectfully dissent as this. case is not ripe for judicial review at this juncture. I also dissent because the Corps was within its authority to deny the NWP authorization and require an environmental impact statement (EIS), irrespective of the district court’s earlier decision in Arkansas Nature Alliance, Inc. v. United States Army Corps of Engineers, 266 F.Supp.2d 876 (E.D.Ark.), modified, 266 F.Supp.2d 895 (E.D.Ark.2003).
I. Ripeness
Before reaching a decision as to the merits of RSLC’s challenges to the district court’s opinion on res judicata and collateral estoppel grounds, we should determine whether we have jurisdiction. Indeed, we have an obligation to raise jurisdictional issues sua sponte “when there is an indication that jurisdiction is lacking.” Thomas v. Basham, 931 F.2d 521, 522-24 (8th Cir. 1991); see also James Neff Kramper Family Farm Partnership v. IBP, Inc., 393 F.3d 828, 830 (8th Cir.2005). RSLC is essentially challenging the Corps’ determination it must produce an EIS. Ripeness concerns inhere in challenges raised prior to a final determination of an applicant’s individual permit application. Upon review, I conclude this case is not ripe for judicial review and we lack jurisdiction. See Pub. Water Supply Dist. No. 8 v. City of Kearney, 401 F.3d 930, 932 (8th Cir. 2005) (concluding ripeness is a jurisdictional challenge).
Where there is no final agency action, a claim in federal court challenging the agency’s action is not ripe for review. See Lane v. United States Dep’t of Ag., 187 F.3d 793, 795 (8th Cir.1999). The Corps, in its Motion to Dismiss, claims “[tjhere is a reviewable agency action as evidenced by Exhibits Q, R, and S to the Amended Complaint.” The documents to which the Corps refers are letters informing RSLC its application for NWP authorization is denied and how to proceed for an individual permit application. The documents also establish RSLC failed to produce timely the information requested by the Corps and, as a result, the Corps considered RSLC’s individual permit application withdrawn. The documents inform RSLC if it wishes to submit the requested information, it can do so at a later date. These documents therefore constitute a denial without prejudice of RSLC’s span bridge individual permit application.[4]
A denial of an authorization under the NWP program is not the end of a permit application. Rather, once a proposed project is denied under the NWP program, it is reviewed for authorization under the individual permit program. See 33 C.F.R. § 330.1(c), (f); 33 C.F.R. §§ 320.1(c), 325.5. Accordingly, a denial of an authorization under the NWP program does not conclusively determine the disputed issue and therefore cannot constitute a “final agency action” ripe for judicial review. See Lotz Realty Co. v. United States, 757 F.Supp. 692, 696 (E.D.Va.1990); Inn of Daphne v. United States, No. Civ.A. 97-0796-BH-S, 1998 WL 34024732, at *4-6 (S.D.Ala. Aug.26, 1998) (unpublished); see also Indus. Hwy. Corp. v. Danielson, 796 F.Supp. 121, 126-30 (D.N.J.1992); Avella v. United States Army Corps of Eng’rs, *1046 No. 89-10064-CIV-KING, 1990 WL 84499 (S.D.Fla. Jan.22, 1990), aff'd, 916 F.2d 721 (11th Cir.1990) (both unpublished); cf. Donnell v. United States, 834 F.Supp. 19, 25 (D.Me.1993) (noting that no administrative appeal is authorized for use of discretionary authority to modify, suspend, or revoke an NWP).
The letter informing KSLC its application for an individual permit had been withdrawn does not constitute a final agency action. “District engineers will decide on all applications not later than 60 days after receipt of a complete application, unless ... (iv)[a] timely submittal of information or comments is not received from the applicant.” 33 C.F.R. § 325.2(d)(3)(iv). If timely submittal of requested information is not received,
[t]he applicant will be given a reasonable time, not to exceed 30 days, to respond to requests of the district engineer. The district engineer may make such requests by certified letter and clearly inform the applicant that if he does not respond with the requested information or a justification why additional time is necessary, then his application will be considered withdrawn or a final decision will be made, whichever is appropriate.
Id. § 325.2(d)(5). In the instant case, the Corps decided to consider RSLC’s application withdrawn as opposed to making a final decision on the application. Accordingly, no final decision was made on RSLC’s application. This is made clear by the Corps’ letter which states, “[t]he 15-day period to respond to our request for additional information has expired, therefore, your application has been officially withdrawn and the permitting evaluation process has been closed. Should you decide to submit the additional information required for a full public interest review please contact our office.”
Indeed, the denial of a permit application resulting from an applicant’s procedural default at the agency level is not properly reviewed by a federal court. See Lotz Realty Co., 757 F.Supp. at 696. In a substantially similar case, a project authorized under the NWP program was can-celled due to a procedural defect for failure to provide the Corps with requested information-a cancellation deemed by the reviewing court to be a non-final agency action. See Inn of Daphne, 1998 WL 34024732, at *6 (“The cancellation was not a denial, but a non-merits termination because of plaintiffs non-action.... [I]t is clearly not a final agency decision in the first instance.”).
The public policy purposes underlying the ripeness doctrine should require us to conclude a denial of an authorization under the NWP program is not ripe for judicial review until the Corps has made a final determination regarding the applicants’ individual permit. Any other approach would allow applicants to adjudicate the merits of an application twice, once under the NWP program, and again under the individual permit program. The ripeness doctrine as it relates to agency actions was designed to avoid such a situation. See Nat’l Ass’n of Home Builders v. United States Army Corps of Eng’rs, 417 F.3d 1272, 1281 (D.C.Cir.2005) (“[T]he notion that ‘would-be dischargers’ like the appellants nevertheless ‘remain free to pursue an individual or general permit’ suggests a ripeness ... problem.”). I cannot say RSLC’s span bridge application would not be authorized under the individual permit program. Indeed, the Corps, although having significant discretion to require an EIS even where no EIS is otherwise required, has no discretion to deny an individual permit application unless the District Engineer finds the project would be contrary to the public interest. 33 C.F.R. §§ 320.4(a)(1), 323.6(b). Neither the Corps’ withdrawal of the application due to RSLC’s failure to follow administrative *1047 procedures nor the denial of an NWP application constitute a final agency action. I must therefore conclude this case is not yet ripe for judicial review.
II. Corps Authority
In addition to the ripeness issue, I dissent from the majority as I believe the Corps was within its authority to deny approval under the NWP program and to require an EIS. I believe before we are called upon to address the res judicata and collateral estoppel issues, we should determine whether there exists a justiciable controversy. As the Corps was within its authority to deny NWP authorization and require an EIS, there is no justiciable controversy in existence.
A. Requirement to Evaluate Under NWP
The regulation at issue does not mandate a conclusion the Corps is required to evaluate RSLC’s span bridge application for NWP authorization. See 33 C.F.R. § 330.1(f) (“[District engineers] should review all incoming applications for individual permits for possible eligibility under regional permits or NWPs.”) (emphasis added). The term “should,” when used to direct agencies, is generally not considered a mandate, but permits an agency to retain some discretion over the matter. See United States v. Maria, 186 F.3d 65, 70 (2d Cir.1999) (“[T]he common meaning of ‘should’ suggests or recommends a course of action, while the ordinary understanding of ‘shall’ describes a course of action that is mandatory.”); see also In re Copper, 426 F.3d 810, 816 (6th Cir.2005) (“If Congress had intended to leave ... absolutely no discretion in the matter, it would have used the more mandatory phrase of ‘shall be able’ ... [rather than ‘may’].”); cf. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432 n. 9, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995) (“Though ‘shall’ generally means ‘must,’ legal writers sometimes use, or misuse, ‘shall’ to mean ‘should,’ ‘will,’ or even ‘may.’ ”). In evaluating the regulations governing NWP authorization in their entirety, there is no indication any meaning other than the common meaning was intended when the term “should” was used.
Nevertheless, the Corps has concluded it is required to evaluate all incoming applications for NWP eligibility pursuant to Crutchfield v. County of Hanover, Va., 325 F.3d 211, 219 (4th Cir.2003) (“The governing regulations specifically require the Corps to ‘review all incoming applications for individual permits for possible eligibility under ... NWPs.’ ” (citing 33 C.F.R. § 330.1(f)). Given Crutchfield, this is a reasonable interpretation of the regulation and must be upheld.
B. Incoming Application
Having determined the Corps’ construction of the regulation requiring it to review all incoming applications for NWP authorization is reasonable, the question remains whether the span bridge application is an “incoming application.” RSLC argues the span bridge application, though raised under the same permit number as the original application, involving a bridge traversing the same river for the same purpose (to provide ingress and egress to the same island) and according to the district court, resulting in similar drinking water impacts as the original application, was an “incoming application” requiring review by the Corps.
Neither party addressed why the application should be considered an incoming application as opposed to a revision of a prior application. The Corps in its filings in Arkansas Nature Alliance effectively indicated its belief the revised application constituted an “incoming application.” Although the Corps claimed in Arkansas Nature Alliance it considered the application *1048 to be an “incoming application,” the Corps appears to have treated the span bridge application as a revision to the previous application in the instant case. The Corps did not assign a new number to the span bridge application.[5] The district court concluded the “project is not new.”
Although the Corps’ position has been seemingly inconsistent throughout the history of RSLC’s bridge applications, the Corps’ position in Arkansas Nature Alliance would effectively preclude it from arguing a contrary position in this litigation. Therefore, while I have doubts the application is properly considered an “incoming” application, as I believe the Corps must be allowed to prevent game-playing by applicants, I believe the Corps’ position in Arkansas Nature Alliance puts us in the awkward position of concluding, for purposes of the instant case only, the permit application is “incoming,” and, based upon the Corps’ interpretation of its regulations, must therefore be reviewed for NWP eligibility.
C. District Engineer Discretion
The majority opines the Corps failed to review the span bridge application for eligibility under the NWP program because it believes the District Engineer did not exercise its discretion in denying the NWP authorization. Although the majority acknowledges the Corps did deny authorization under an NWP, it suggests the denial was invalid because it was not made by the District Engineer. This claim is based upon the Corps’ letter denying the NWP authorization, which states, “[a]s directed by the court’s order, your request for a span bridge cannot be issued through the Corps of Engineer’s Nationwide Permit Program.” The majority speculates because the reasoning of the letter is based upon the court’s opinion, the District Engineer never exercised his or her discretion to deny the NWP authorization. I respectfully must disagree.
The majority mistakenly relies upon regulations granting the District Engineer “discretionary authority” for its conclusion the District Engineer must deny the application for NWP authorization. However, the regulations related to the District Engineer’s “discretionary authority” all relate to its ability to modify, suspend, or revoke an existing NWP or NWP authorization.[6] See 33 C.F.R. §§ 330.1(d), .2(g), .4(e). There is no existing NWP authorization in the instant case and the NWP has not been modified, suspended, or revoked. Accordingly, the authority upon which the majority relies is misplaced.
The District Engineer does “have authority to determine if an activity complies with the terms and conditions of an NWP.” 33 C.F.R. § 330.4(b)(1). The only significant direction given to the Corps in denying activities under NWPs is: “[i]f the [District Engineer] decides that an activity does not comply with the terms or conditions of an NWP, he will notify the person desiring to do the work and instruct him on the procedures to seek authorization under a regional general permit or individual permit.” 33 C.F.R. § 330.6(a)(2); see also 33 C.F.R. § 330.2(c). The Corps has *1049 implicitly interpreted this regulation as allowing the instant denial of RSLC’s application for NWP authorization to be made by persons other than the District Engineer.
The regulations do not establish the District Engineer (1) must act in a particular manner to exercise properly his or her authority, (2) cannot delegate this authority, or (3) is vested with exclusive authority to deny an NWP authorization. Accordingly, although the regulations clearly contemplate denials of NWP authorizations can occur at the hands of the District Engineer, see 33 C.F.R. § 330.6(a)(1) (A District Engineer “should respond as promptly as practicable to [requests for confirmation that an activity complies with the terms and conditions of an NWP].”), I cannot say the Corps’ interpretation of the regulation is unreasonable.[7] Further, I cannot say the Corps acted arbitrarily or capriciously in denying RSLC authorization under the NWP program by letter from a lawyer as opposed to the District Engineer.[8]
D. Authority to Require EIS
I further disagree with the majority as I believe the Corps was within its authority to require an EIS. RSLC’s initial bridge application was authorized under NWP 14 by Letter of Permission on January 22, 2001. A Letter of Permission is used in lieu of more complex approval documents, such as records of decision, used to approve applicants providing an EIS, and statements of findings, used to approve applicants providing an EA. Letters of Permission are used to confirm authorization of applications under NWPs. Letters of Permission may only be used when “the proposed work would be minor, would not have significant individual or cumulative impacts on environmental values, and should encounter no appreciable opposition.” 33 C.F.R. § 325.2(e)(l)(i).
The prior challenge to RSLC’s bridge application and the guarantee by Arkansas Nature Alliance it would challenge a Finding of No Significant Impact establishes appreciable opposition to the span bridge application. See Ark. Nature Alliance, 266 F.Supp.2d at 897. Accordingly, a Letter of Permission may not issue. Because the span bridge application is not eligible for consideration under 33 C.F.R. § 325.2(b), the standard permitting procedures must be followed. See 33 C.F.R. § 325.2(a).
The standard permit procedures require the preparation of an environmental assessment (EA) or EIS unless a categorical exclusion applies. 33 C.F.R. § 325.2(a)(4). A categorical exclusion is “a category of actions which do not individually or cumulatively have a significant effect on the human environment,” 40 C.F.R. § 1508.4, and are either specifically listed under 33 C.F.R. pt. 325, app. B., para. 6, or can be authorized by Letter of Permission. 33 C.F.R. pt. 325, app. B„ para. 6(5). NWPs *1050 are considered “categorical exclusions” because they qualify as Letters of Permission. See Md. Native Plant Soc’y v. United States Army Corps of Eng’rs, 332 F.Supp.2d 845, 850 (D.Md.2004). However, in the instant case, RSLC’s proposed span bridge is not specifically listed under either 33 C.F.R. pt. 325, app. B., para. 6 or under 33 C.F.R. § 230.9, and does not qualify for a Letter of Permission. Accordingly, the standard permitting procedures require the span bridge application include an EA or EIS. See 33 C.F.R. § 325.2(a)(4) (“A decision on a permit application will require either an environmental assessment or an environmental impact statement unless it is included within a categorical exclusion.”). “In those cases where it is obvious an EIS is required, an EA is not required. However, the district engineer should document his reasons for requiring an EIS.” 33 C.F.R. pt. 325, app. B, para. 7.
Generally, an EA is first undertaken to determine whether adverse environmental impacts are sufficiently likely to warrant further study and documentation in the form of an EIS. See 40 C.F.R. §§ 1508.4, .9. However, this procedure is not set in stone and the Corps can require an EIS instead of an EA. In doing so, however, “the district engineer should document his reasons for requiring an EIS” as opposed to an EA. 33 C.F.R. pt. 325, app. B, para. 7. In the Corps’ letter dated February 27, 2003, revoking RSLC’s Letter of Permission, the Corps relied upon the Arkansas Nature Alliance case to deny the NWP authorization and require an EIS. Given the similarity of the flooding and other impacts on Landers Island caused by increasing public access to the island identified by the district court, the Corps’ decision to require an EIS is not arbitrary or capricious. See Ark. Nature Alliance, 266 F.Supp.2d at 897 (requiring EIS), modifying 266 F.Supp.2d at 890-92 (concluding the scope of the Corps’ review of the bridge should include impacts on Landers Island).
Although the Corps is not entitled to deference in its interpretation of the district court’s opinion, the Corps was required to follow its standard permitting procedures and request either an EA or an EIS. The Corps need only provide a reason why it requests an EIS as opposed to an EA. It did so in its letter dated February 27, 2003, when it relied upon the district court’s opinion. The Corps followed its mandate and therefore, I cannot conclude the Corps’ decision to require an EIS was arbitrary or capricious.
III. Conclusion
For the foregoing reasons, I respectfully dissent.

. Exhaustion of administrative appeals is a prerequisite to filing a lawsuit in federal court. 33 C.F.R. §§ 331.12, 331.10. Where no administrative appeal process exists for a final agency action, the action is reviewable in federal court if it constitutes a "final agency” decision. 5 U.S.C. § 704. Here, there is no right to administratively appeal the denial of an application for NWP authorization. See 33 C.F.R. §§ 320.1(a)(2), 320.4(j), 331.2, 325.5(b). Accordingly, our jurisdiction to review the action depends upon whether the action was final.

. Even if, as the majority asserts, the Corps failed to evaluate the span bridge application for NWP eligibility, this "failure” would support the conclusion the Corps considered the application to be merely a revision and not an "incoming application.”

. District Engineers modifying, suspending, or revoking NWP authorizations affect applicants' investments to a significant extent. Requiring District Engineers to follow particular procedures and safeguards in such a situation is necessary to protect properly applicants’ investments. The same concerns, however, are not present when the project has not been constructed and the applicant is merely seeking confirmation that a proposed activity will comply with the requirements of an NWP.

. Indeed, the District Engineer’s delegation of legal questions regarding res judicata and collateral estoppel to a lawyer seems eminently reasonable. Even if the district court erred in its res judicata and collateral estoppel analysis, and even if the Corps' lawyer erred in viewing the district court's order as having preclusive effect, the issue is close, and I cannot say the decision to require an EIS under the circumstances was arbitrary or capricious.

. The denial letter included instructions regarding the procedures RSLC must follow to apply for an individual permit. The only remaining issue raised by the majority is whether the District Engineer can base his decision to deny NWP authorization on a court order as opposed to a review of the administrative record. It would result in poor public policy to require a District Engineer to repeatedly review the administrative record even when a court had conclusively ruled on the issue. Accordingly, I find no reversible error.