Jennifer **CLODFELTER, Individually and as Next Friend of N.C., a minor; John Clodfelter; Gloria Clodfelter; Joseph Clodfelter; Sharla Costelow, Individually and as the Next Friend of E.C. and B.C., minors; George Costelow; Dorothy Costelow; Ronald W. Francis; Sandra Francis; David Francis; James Francis; Sarah Guana Esquivel; Lou Gunn; Mona Gunn; Anton J. Gunn; Jamal Gunn; Jason Gunn; Novella Wiggins; Diane McDaniels, Individually and as Next Friend of J.M., a minor; Frederica McDaniels–Bess; Jesse Nieto; Jamie Owens, Individually and as the Guardian of the Estate and Next Friend of I.M.O., a minor; Kenyon Embry; Teresa Smith; Leroy Parlett; Etta Parlett, Individually and as Next Friend of H.P., a minor; Kera Parlett Miller; Matthew Parlett; Kate Brown; Sean Walsh; Kevin Roy; Olivia Rux; Rogelio Santiago; Simeona Santiago; Jacqueline Saunders, Individually and as the Guardian of the Estate and Next Friend for J.T.S., a minor; Isley Gayle Saunders; Gary Swenchonis, Sr.; Deborah Swenchonis; Shalala Swenchonis–Wood; Lorie D. Triplett, Individually and as the Guardian of the Estate and Next Friend of A.T. and S.R.T., minors; Reed Triplett; Savannah Triplett; Freddie Triplett; Theodis Triplett; Kevin Triplett; Wayne Triplett; Thomas Wibberly; Patricia A. Wibberly; Toni Wibberly; Timothy Paul Sceviour, as Personal Representative of the Estates of Kenneth Eugene Clodfelter, Richard Costelow, Lakeina Monique Francis, Timothy Lee Gauna, Cherone Louis Gunn, James Roderick McDaniels, Marc Ian Nieto,**

Ronald Scott Owens, Lakiba Nicole Palmer; Timothy Paul Sceviour, as Personal Representative of the Estates of Joshua Langdon Parlett, Patrick Howard Roy, Kevin Shawn Rux, Ronchester Mananga Santiago, Timothy Lamont Saunders, Gary Graham Swenchonis, Jr., Andrew Triplett and Craig Bryan Wibberly, Plaintiffs–Appellants,

and

Ollesha Smith Jean; Jack Earl Swenson; Avinesh Kumar, Individually and as the Guardian of the Estate and Next Friend of C.K., a minor; Hugh M. Palmer, Plaintiffs,

v.

REPUBLIC OF SUDAN,
Defendant–Appellee,

United States of America, Intervenor.

No. 11–2118.

United States Court of Appeals,
Fourth Circuit.

Argued: May 14, 2013.

Decided: June 20, 2013.

**ARGUED:** Andrew C. Hall, Hall, Lamb and Hall, P.A., Miami, Florida, for Appellants. Adam C. Jed, United States Department of Justice, Washington, D.C., for Intervenor. **ON BRIEF:** Roarke Maxwell, Hall, Lamb and Hall, P.A., Miami, Florida; Kevin E. Martingayle, Stallings & Bischoff, P.C., Virginia Beach, Virginia; Nelson M. Jones, III, Law Firm of Nelson M. Jones, III, Houston, Texas; James Cooper–Hill, Law Office of James Cooper–Hill, Rockport, Texas, for Appellants. Neil H. MacBride, United States Attorney, Alexandria, Virginia; Stuart F. Delery, Acting Assistant Attorney General, Mark B. Stern, United States Department of Justice, Washington, D.C., for Intervenor.

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

Reversed and remanded by published opinion. Judge DUNCAN wrote the opinion, in which Judge AGEE and Judge DAVIS joined. Judge DAVIS wrote a separate concurring opinion.

DUNCAN, Circuit Judge:

After the bombing of the U.S.S. Cole in October 2000, fifty-nine family members of the victims (the "plaintiffs") filed suit against the Republic of Sudan ("Sudan") in 2004. In 2007, the district court found Sudan liable under the Death on the High Seas Act (the "DOHSA"), and ordered it to pay damages. When the plaintiffs, joined by four others not party to the 2004 complaint, commenced a new suit against Sudan in April 2010 invoking a federal cause of action under the Foreign Sovereign Immunities Act (the "FSIA"), the district court concluded that the previous judgment under the DOHSA precluded an action under the FSIA. For the reasons that follow, we reverse.

## I.

This appeal is the fourth time the plaintiffs have appeared before us. The three previous instances were in connection with the plaintiffs' action in *Rux v. Republic of Sudan*. After briefly setting out the underlying facts, we describe the procedural history of *Rux* and this case in greater detail.

## A.

On October 12, 2000, the U.S.S. Cole, a Navy Destroyer, entered the Port of Aden in Yemen to refuel.[1] As it refueled, two males approached the Navy Vessel in a small motorboat. Shortly thereafter, the small boat exploded, killing seventeen Navy sailors and injuring forty-two others.

This attack was carried out by operatives from Al Qaeda, a worldwide terrorist network then led by Osama Bin Laden. During much of the 1990s, Bin Laden and other Al Qaeda members resided in Sudan, which provided them with the support, guidance, and resources necessary to perpetrate the attack on the U.S.S. Cole.

## B.

Although the plaintiffs filed their complaint in the instant case in April 2010, the relevant procedural history begins when they first filed suit against Sudan in 2004. To overcome the immunity typically accorded a foreign country in U.S. courts under the FSIA, the plaintiffs invoked that statute's exception for state sponsors of terrorism. *See* 28 U.S.C. § 1605(a)(7).[2] The United States Department of State had designated Sudan a "state sponsor of terrorism" in August 1993. *See* Determination Sudan, 58 Fed.Reg. 52,523 (Oct. 8, 1993). Section 1605(a)(7) of the FSIA operated to confer subject-matter jurisdiction over Sudan by stripping its immunity, but did not provide a federal cause of action. *Cicippio–Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033–36 (D.C.Cir. 2004).[3] The plaintiffs therefore asserted wrongful death claims under the DOHSA, 46 U.S.C. §§ 30301 *et seq.*, and state law claims for intentional infliction of emotional distress and maritime wrongful death.

Sudan moved to dismiss the 2004 complaint on jurisdictional grounds. The district court denied Sudan's motion, and we affirmed. *See Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir.2006). Sudan then informed the district court by letter that it would not participate in the merits of the case.

The plaintiffs subsequently moved in district court for entry of default and default judgment against Sudan, which the FSIA permits only where a plaintiff "establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Following a two-day trial in March 2007, the district court concluded the plaintiffs had established sufficient evidence to warrant entry of default judgment for wrongful death under the

---

1. These facts are drawn from the district court's comprehensive discussion of the October 2000 attack on the U.S.S. Cole. *See Rux v. Republic of Sudan*, 495 F.Supp.2d 541, 544–54 (E.D.Va.2007).

2. Congress repealed this provision in 2008 and replaced it with 28 U.S.C. § 1605A. We explain the relevant differences between § 1605(a)(7) and § 1605A below.

3. Before the D.C. Circuit's ruling in *Cicippio–Puleo*, a number of district courts had interpreted § 1605(a)(7) as both stripping a foreign state's immunity and providing a substantive cause of action. Filing their action after *Cicippio–Puleo*, the plaintiffs only invoked § 1605(a)(7) to strip Sudan's immunity from suit. As we explain below, Congress effectively overturned *Cicippio–Puleo* by creating a federal cause of action under the FSIA in 2008 through the enactment of § 1605A.

DOHSA. By contrast, the district court dismissed for failure to state a claim the plaintiffs' state law claims for intentional infliction of emotional distress and maritime wrongful death on the basis that the DOHSA preempted those claims. The district court then calculated each plaintiff's pecuniary loss as required by the DOHSA, see 46 U.S.C. § 30303 ("The recovery in an action under this chapter shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought."), and ordered Sudan to pay $7,956,344 in compensatory damages to eligible plaintiffs.

The plaintiffs appealed the district court's dismissal of their state law claims. While this appeal was pending, Congress passed the National Defense Authorization Act for Fiscal Year 2008 (the "NDAA"), Pub.L. No. 110–181, 122 Stat. 3, which became effective on January 28, 2008. The NDAA potentially affected the plaintiffs' case in two significant ways. First, § 1083(a) of the NDAA repealed the FSIA provision governing state sponsors of terrorism, § 1605(a)(7), and replaced it with a new provision: 28 U.S.C. § 1605A. While § 1605A retained the immunity-stripping function of the previous statutory provision, it explicitly provided for a federal private right of action and allowed plaintiffs to seek "economic damages, solatium, pain and suffering, and punitive damages" for certain torts committed by foreign states.[4] § 1605A(c).

The second way the NDAA potentially affected the plaintiffs' case was through a detailed provision governing how and under what circumstances § 1605A would apply to pending and decided cases. See NDAA § 1083(c). Where a plaintiff, in bringing a "prior action," had relied on § 1605(a)(7) as the source of a cause of action, and that action had been "adversely affected on the grounds that [§ 1605(a)(7)] fail[ed] to create a cause of action against the [foreign] state," that plaintiff could move the district court to have the case treated as though it had been originally filed under § 1605A. See NDAA § 1083(c)(2). Section 1083(c)(2)(B) waived defenses of res judicata and collateral estoppel for any "prior actions." Finally, the NDAA also permitted a plaintiff who had timely commenced a suit under § 1605(a)(7) to bring a "related action" under § 1605A so long as the plaintiff commenced the related action no more than sixty days after either the entry of judgment in the original action or the date of the NDAA's enactment. NDAA § 1083(c)(3).

On the plaintiffs' motion, we remanded Rux to the district court to determine whether the newly created private right of action under § 1605A of the FSIA took precedence over the DOHSA for terrorism-related deaths occurring on the high seas. At the district court, the plaintiffs moved under NDAA § 1083(c)(2)(A) to amend their complaint to add a cause of action under the newly enacted § 1605A. Noting that the plaintiffs had filed their complaint after the D.C. Circuit held in Cicippio–Puleo that § 1605(a)(7) did not create a private right of action, the district court concluded that plaintiffs had not relied upon § 1605(a)(7) as creating a substantive cause of action. See Rux v. Republic of Sudan, 672 F.Supp.2d 726, 734–35 (E.D.Va.2009). It therefore denied plaintiffs' motion to amend, answering our inquiry—whether § 1605A trumped the

---

**4.** Specifically, Congress created a cause of action "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources" if committed "by an official, employee, or agent of [a] foreign state . . . ." § 1605A (a).

DOHSA for terrorism-related deaths at sea—in the negative. *Id.* at 738. The plaintiffs again appealed.

After the plaintiffs and the government, which intervened under 28 U.S.C. § 517, filed their briefs, but before oral argument, the plaintiffs, joined by several others, filed a new complaint in the case now before us. *See Kumar et al. v. The Republic of Sudan,* No. 10–cv–171 (E.D.Va. filed Apr. 15, 2010). In light of the new filing and the contrary positions taken by the plaintiffs, we dismissed the plaintiffs' appeal of the district court's denial of their motion to amend under NDAA § 1083(c)(2) as moot, and affirmed the district court's dismissal of the state law claims.[5] *See Rux v. Republic of Sudan,* 410 Fed.Appx. 581, 586–87 (4th Cir.2011). In a footnote, we made clear that we were "proceeding under the assumption that the district court will give full and fair consideration to [the plaintiffs'] arguments regarding the existence of a live controversy in their new, related action filed directly under § 1605A ... and will exercise an appropriate measure of restraint with regards to the well-established principle of constitutional avoidance." *Id.* at 586 n. 8.

### C.

This extended background places the current case and the district court's decision below in the proper context. The complaint in *Kumar v. Sudan* listed the same fifty-nine plaintiffs from *Rux* and added four others, Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean (collectively, the "Kumar plaintiffs"). The complaint alleged seventeen counts of wrongful death under 28 U.S.C. § 1605A. With Sudan again failing to enter an appearance, the Kumar plain-

tiffs moved in July 2010 for default judgment under the FSIA. The district court set a hearing on the Kumar plaintiffs' motion, advising them in an order that it intended to address five issues: whether it had jurisdiction; whether the Kumar plaintiffs' claims were barred by res judicata; whether the Kumar plaintiffs' claims satisfied the statute of limitations under NDAA § 1083(c)(3); whether the waiver of res judicata under NDAA § 1083(c)(2)(B) was constitutional as applied to a foreign sovereign; and whether NDAA § 1083(c) violated the Constitution's separation of powers doctrine. J.A. 86.

After considering briefs and conducting a hearing, the district court withheld ruling on the motion for default judgment with respect to the four new plaintiffs, and denied it as to the fifty-nine plaintiffs for whom it had entered judgment in *Rux.* The district court's analysis first addressed whether to construe the complaint in *Kumar* as a "related action" under NDAA § 1083(c)(3) or a new action filed directly under 28 U.S.C. § 1605A. Reasoning that the plaintiffs had failed to act within sixty days of either the passage of the NDAA in January 2008 or the date of entry of judgment in *Rux,* the district court concluded that they had not commenced a related action under NDAA § 1083(c)(3). J.A. 166.

The district court next analyzed whether the doctrine of res judicata barred the plaintiffs' claims. Noting that we apply the "transactional" test, which considers whether "the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved in the prior judgment,'" *id.* (quoting *Pittston Co. v. United States,* 199 F.3d

---

5. Considering that the plaintiffs argued that § 1605A preempted their state law claims, we assumed without deciding the preemption of those state law claims and affirmed the district court's dismissal on that basis.

694, 704 (4th Cir.1999)), the district court found there was "no question" that *Kumar* arose out of the same transaction as that at issue in *Rux, id.* at 167.

In concluding that res judicata precluded the plaintiffs' claims, the district court distinguished and disagreed with *In re Islamic Republic of Iran Terrorism Litigation,* 659 F.Supp.2d 31, 84–86 (D.D.C. 2009), which considered, *inter alia,* whether to give res judicata effect to prior actions under § 1605(a)(7). It distinguished *Iran Terrorism Litigation* on the ground that the plaintiffs here could have brought their claims as a related action under NDAA § 1083(c)(3), but chose not to. The district court also disagreed with the statement in *Iran Terrorism Litigation* that res judicata "cannot be applied where, as here, the claims now being asserted could not have been raised in the prior litigation." *Id.* at 84. Instead, noting a general rule that "changes in the law do not overcome the effects of res judicata," the district court reasoned that although some courts recognize an exception where the legislature creates a new statutory cause of action, "the weight of these precedents" was "doubtful." J.A. 168.

Moving beyond its res judicata analysis, the district court maintained that permitting the plaintiffs to bring a new cause of action would in any event run afoul of the constitutional principles of finality and separation of powers. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (holding that Congress may not deprive "judicial judgments of the conclusive effect that they had when they were announced").

Observing that the plaintiffs here had already "obtained a substantial prior judgment" and now sought "further remedies . . . via Congressional policy," the district court characterized Congress's enactment of § 1605A through the NDAA as "a deliberate effort to change the outcome in cases that have already been fully decided before an Article III tribunal." J.A. 168. The district court therefore denied the plaintiffs' motion for default judgment.[6]

The plaintiffs timely appealed.

## II.

The plaintiffs press two arguments on appeal. First, they contend that res judicata does not preclude them from asserting statutory causes of action under 28 U.S.C. § 1605A. In making this argument, the plaintiffs take issue both with the district court's sua sponte consideration of the res judicata defense, and its ultimate decision to apply that doctrine to bar their claims. As part of this argument, they maintain that NDAA § 1083(c) does not violate the separation of powers by permitting an unconstitutional reopening of final judgments. Second, the plaintiffs contend that the district court erred by applying the limitation period for a related action under NDAA § 1083(c)(3) to their claims, which were filed directly under 28 U.S.C. § 1605A.

Although Sudan has not appeared in this case,[7] the United States government has accepted our invitation to intervene under 28 U.S.C. § 2403. It agrees with the plaintiffs' position that the district court

---

**6.** As noted above, the district court withheld ruling as to the four new plaintiffs, including the lead plaintiff Avinesh Kumar. On appeal, therefore, the case caption begins with plaintiff Jennifer Clodfelter. For the sake of brevity and clarity, we refer to the case now before us as the *Kumar* case.

**7.** Unlike in *Rux,* where it contested subject-matter jurisdiction, Sudan has not appeared during any phase of the *Kumar* case.

erred to the extent its ruling relied on a conclusion that the statutory provisions at issue here require an unconstitutional re-opening of final judgments. On the other hand, the government argues that the district court did not abuse its discretion by considering sua sponte whether res judicata precluded the plaintiffs' claims. The government takes no position on the merits of the district court's res judicata analysis.

We begin with the plaintiffs' argument that the district court mistakenly applied the limitations period under NDAA § 1083(c). In addressing this argument, we also explain why we do not reach the constitutional question. We then turn to the issue of res judicata.

### A.

A brief summary of the relevant statutory framework provides necessary background for the plaintiffs' argument. When Congress amended the FSIA to create a federal private cause of action for terrorism-related injuries and deaths, it chose as its legislative vehicle the National Defense Authorization Act for Fiscal Year 2008. In NDAA § 1083(a), Congress enacted that cause of action as 28 U.S.C. § 1605A, which we have already discussed. In NDAA § 1083(b), Congress passed various conforming amendments, including the repeal of 28 U.S.C. § 1605(a)(7), the predecessor to § 1605A. Finally, NDAA § 1083(c) describes in detail under what circumstances to apply the newly-enacted cause of action retroactively to pending or decided cases.

Contrary to the plaintiffs' suggestion, the district court did not dismiss their claims for failure to comply with the stat-ute of limitations under NDAA § 1083(c)(3). Instead, the district court considered whether the plaintiffs' claims constituted a "related action" under NDAA § 1083(c)(3), ultimately concluding that the plaintiffs, by failing to comply with the time limitations imposed by that provision, could not bring their new claim under NDAA § 1083(c). This conclusion—that the plaintiffs' complaint in *Kumar v. Sudan* did not arise under NDAA § 1083(c)(3) as a related action but instead arose directly under 28 U.S.C. § 1605A—accorded with the position the plaintiffs took in their brief to the district court below, *see* J.A. 98 ("Whether the Plaintiffs' claims satisfy the statute of limitations in § 1083(c)(3) is not at issue in the instant case and a moot question. The only statute of limitations applicable to the instant case is the ten year statute of limitations stated in 28 U.S.C. § 1605A (b)."), and repeat here, *see* Appellant's Br. at 31.[8]

■ It follows, the plaintiffs assert, that because they filed a *new* action directly under 28 U.S.C. § 1605A, the various provisions of NDAA § 1083(c) governing how to apply § 1605A retroactively to pending and previous actions are simply inapplicable to this case. We agree. By its express terms, NDAA § 1083(c) applies to "pending cases" at the time of its enactment in January 2008, and this case—*Kumar v. Sudan,* filed in 2010–was not pending at that time. Moreover, § 1083(c) does not compel a plaintiff who had originally filed a case under § 1605(a)(7) to convert it to a case under § 1605A: "If an action ... has been timely commenced under section 1605(a)(7) ... any other action arising out of the same act or incident *may* be brought under section 1605A."

---

8. The plaintiffs contend they satisfied the applicable statute of limitations under § 1605A(b)(2) by filing their complaint in April 2010, which was no later than ten years after the October 12, 2000 bombing of the U.S.S. Cole. Although the district court did not address this question, the plaintiffs' argument appears to be correct.

NDAA § 1083(c)(3) (emphasis added). Instead, this provision enables a plaintiff who timely commenced an action under now-repealed § 1605(a)(7) to bring another action under § 1605A even if the latter action would not otherwise satisfy the limitations set out in 28 U.S.C. § 1605A (b). The plaintiffs in *Kumar* had no reason to invoke NDAA § 1083(c)(3) because their action satisfied the ten-year statute of limitations in § 1605A. In sum, the various provisions of § 1083(c) are inapplicable here.

Because NDAA § 1083(c) does not apply to this case, we need not address whether that provision's instructions for how to apply § 1605A retroactively violate the separation of powers doctrine under the Supreme Court's decision in *Plaut v. Spendthrift Farm.* The district court's conclusion that the law at issue unconstitutionally "permit[ed] plaintiffs to reopen prior judgments," J.A. 168, can only apply to the provisions in NDAA § 1083(c); nothing in 28 U.S.C. § 1605A can be construed to permit the reopening of final judgments.[9] Mindful that we "refrain from passing upon the constitutionality of an act of Congress unless obliged to do so," *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (cita-

tion omitted), we decline to consider the constitutionality of NDAA § 1083 because it does not apply on the facts of this case.

## B.

We next consider whether the doctrine of res judicata[10] bars the plaintiffs' claims in this case. The plaintiffs posit two errors in the district court's analysis. First, they argue as a threshold matter that the district court should not have considered sua sponte the res judicata affirmative defense. Even if doing so was not error, the plaintiffs contend, res judicata does not apply here because Congress in § 1605A created a new statutory cause of action after they had filed their complaint in 2004. We consider each in turn.

### 1.

■ Before deciding whether the district court erred by considering the issue of res judicata, we must determine the proper standard by which to review its sua sponte action. The plaintiffs advocate for de novo review in their brief, and the government's position on the point is unclear. The government's brief first suggests that we review the district court's action de novo, *see* Gov't Br. at 14, but then argues that when the district court considered res judicata sua sponte, it "did

---

9. As the government notes, § 1605A instead simply "creates a federal cause of action that did not previously exist, and ... provides remedies ... that were not available under the [DOHSA]." Gov't Br. at 16.

10. The term "res judicata" is often used to refer to both "claim preclusion," where a previous judgment forecloses litigation on the basis that it was decided in the previous case, and "issue preclusion," which "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *see also* Charles Alan Wright et al., 18 *Federal Practice & Procedure*

§ 4402 (2d ed. 2002) ("Although the time has not yet come when courts can be forced into a single vocabulary, substantial progress has been made toward a convention that the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.' ").

We use the more familiar but less precise "res judicata" for several reasons. The parties below and in their briefings referred only to res judicata, as did the district court. Congress also used this older terminology when it enacted 28 U.S.C. § 1605A through the NDAA. *See* NDAA § 1083(c)(2)(B).

not abuse its discretion," *id.* at 17, and similarly "acted within its discretion," *id.* at 19. When asked at oral argument which standard of review it would have us apply, counsel for the government seemed to advocate for abuse of discretion.[11] While we have characterized a district court's sua sponte consideration of a statute of limitations affirmative defense as a question of law befitting de novo review, *see Eriline Co. S.A. v. Johnson,* 440 F.3d 648, 653 (4th Cir.2006), we have not squarely addressed the appropriate standard of review for a court's sua sponte consideration of res judicata.

Although no sister circuit appears to have directly addressed this issue either, courts have consistently described a district court's sua sponte consideration of a res judicata defense as permissible but not required. *See, e.g., Scherer v. Equitable Life Assurance Soc'y,* 347 F.3d 394, 398 n. 4 (2d Cir.2003) ("[A] court is free to raise that defense [of res judicata] *sua sponte,* even if the parties have seemingly waived it. There is, however, no obligation on the part of a court to act *sua sponte* and interpose the defense if it has not been raised."); *Holloway Constr. Co. v. U.S. Dep't of Labor,* 891 F.2d 1211, 1212 (6th Cir.1989) ("[A] district court *may* invoke the doctrine of res judicata in the interests of, *inter alia,* the promotion of judicial economy." (emphasis added)); *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir. 1986); *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980). Similarly, the Supreme Court's holding in *Arizona v. California,* 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), that sua sponte consideration of a preclusion defense "might be appropriate in special circumstances," sug-

gests an inherently discretionary judgment. This language indicates that whether to consider res judicata sua sponte amounts to a situation where "there is no single right or wrong answer." Harry T. Edwards & Linda A. Elliot, *Federal Standards of Review* Ch. I.E (2007). Abuse of discretion is typically the preferred standard of review in such circumstances. *Id.*

Two other considerations militate in favor of reviewing the district court's action here for abuse of discretion. First, the extent and nature of the previous proceedings will inform a district court's decision to raise a preclusion defense on its own initiative, and a district court judge is better positioned than an appellate court to appreciate the particulars of the prior case. Second, our case law recognizes res judicata as a special category of affirmative defense: one which implicates "important institutional interests of the courts" in addition to the interests of the litigants. *Eriline,* 440 F.3d at 654. As such, it is appropriate to distinguish the discretion vested in a district court's sua sponte consideration of res judicata from the de novo review we apply to a district court's sua sponte consideration of a statute of limitations affirmative defense. *Id.* at 653. We therefore review the district court's sua sponte decision to consider whether res judicata bars a plaintiff's claims for abuse of discretion.

2.

■ The plaintiffs correctly note that as a general matter, a district court should not sua sponte consider an affirmative defense that the defendant has the burden of raising. *See Eriline,* 440 F.3d at 653–54.

---

11. Counsel for the government acknowledged that courts of appeal do not always distinguish a district court's decision to consider res judicata sua sponte from its analysis of the merits of the res judicata doctrine, which latter inquiry is reviewed de novo. When an appellate court considers these questions together, it is not necessarily apparent under which standard it decides the issue of sua sponte consideration.

Res judicata is such a defense. *See* Fed. R.Civ.P. 8(c). In the plaintiffs' view, Sudan's failure to raise the res judicata affirmative defense should end our consideration.

The government disagrees. It points to *Arizona v. California,* in which the Supreme Court indicated that a court's sua sponte consideration of a preclusion defense "might be appropriate in special circumstances." 530 U.S. at 412, 120 S.Ct. 2304. Following *Arizona,* we have permitted sua sponte consideration of affirmative defenses where the proceedings "implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation," and suggested that res judicata is among the affirmative defenses that may warrant sua sponte consideration. *Eriline,* 440 F.3d at 656. The government argues that this case presents a "special circumstance" under *Arizona.* We agree.

Comity in the face of an absent foreign sovereign presents a special circumstance permitting sua sponte consideration of a res judicata defense. Sudan, a foreign sovereign, has not appeared in this case. Moreover, unlike the party requesting the Supreme Court to engage in sua sponte consideration of res judicata in *Arizona,* Sudan has had neither "ample opportunity" nor "cause" to raise a res judicata defense. *See Arizona,* 530 U.S. at 413, 120 S.Ct. 2304. Just as "considerations of comity, federalism, and judicial efficiency" militated in favor of a district court's sua sponte consideration of a statute of limitations affirmative defense in *Hill v. Braxton,* 277 F.3d 701, 705 (4th Cir.2002), so here do the reciprocal foreign litigation

interests of the United States and a concern for judicial efficiency support the district court's sua sponte consideration of res judicata.[12]

Two additional reasons reinforce this conclusion. First, the district court here has expended significant judicial resources on determining whether the plaintiffs are entitled to relief under the Foreign Sovereign Immunities Act. "Where no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte,* thereby eroding the principle of party presentation so basic to our system of adjudication." *Arizona,* 530 U.S. at 412–13, 120 S.Ct. 2304. The plaintiffs argue that because the district court had not until the *Kumar* case adjudicated their claims under § 1605A, it has not expended any judicial resources. But this view ignores the substantial time the district court has spent on the "resolution of a question," namely, the plaintiffs' right to relief from Sudan under the FSIA for the terrorist attack on the U.S.S. Cole. Given that the district court judge has presided over a trial, conducted numerous hearings, and issued at least three opinions over almost a decade of trying to resolve this question, the district court's significant expenditure of judicial resources justified its sua sponte consideration of the res judicata affirmative defense.

Second, the FSIA's requirement that a plaintiff seeking default judgment "establish[ ] his claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), also weighs in favor of the district court's sua sponte consideration of res judicata in this case. As we recognized in

---

12. We note that the comity due an absent foreign sovereign applies regardless of the nature of the allegations against that sovereign or whether they are ultimately proven. To hold otherwise would require a district court to assess the merits of the res judicata analysis, and, by extension, the merits of a plaintiff's claims when weighing the threshold question of whether it ought to consider res judicata sua sponte.

*Eriline,* sua sponte consideration of an affirmative defense can be appropriate where a district court is "charged with the unusual duty of independently screening initial filings, and dismissing those actions that plainly lack merit." 440 F.3d at 656. Although § 1608(e) does not require a district court to tick through various affirmative defenses simply because an absent sovereign has failed to raise them, its command that a district court consider whether the plaintiff has met its evidentiary burden suggests that a district court may properly take a close look at a plaintiff's case. Here, the district court did not abuse its discretion when, as part of this close look, it considered sua sponte whether res judicata barred the plaintiffs' claims.

### 3.

■ We turn finally to the district court's application of the res judicata doctrine, which we review de novo. *Pueschel v. United States,* 369 F.3d 345, 354 (4th Cir.2004). The application of res judicata turns on the existence of three factors: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* at 354–55. There is no question either that the plaintiffs' earlier action in *Rux* culminated in a final judgment or that the parties to each suit are identical.[13] The focus here is therefore on the second prong. The thrust of the plaintiffs' argument is that because they could not have asserted a claim under 28 U.S.C. § 1605A when they filed their complaint in 2004, no "identity of the cause action" existed as between the two suits.

■ As the district court recognized, we follow the "transactional" approach when

considering whether causes of action are identical: "As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 210 (4th Cir.2009) (citation omitted). Under this transactional approach, res judicata will bar a "newly articulated claim[ ]" if it is based on the same underlying transaction and could have been brought in the earlier action. *See Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 162 (4th Cir.2008).

Because the underlying transaction giving rise to both *Rux* and *Kumar*—the terrorist bombing of the U.S.S. Cole and the resulting deaths—is unquestionably the same, we consider whether the plaintiffs could have brought their § 1605A claim in *Rux,* the earlier action. This proves to be a challenging question. In the district court's view, the plaintiffs' failure to avail themselves of the avenue provided by Congress in NDAA § 1083(c)(3) to timely file a "related action" at some point after January 2008 means the plaintiffs could have, but did not, assert a claim under § 1605A in *Rux.* The plaintiffs, by contrast, argue that the absence of a federal cause of action *at the time they filed their complaint* in 2004 should render res judicata inapplicable. *See Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Eng'rs,* 440 F.3d 1038, 1042 (8th Cir.2006) ("[R]es judicata does not apply to claims that did not exist *when the first suit was filed.*" (emphasis added)).

■ Ultimately, we do not decide whether the relevant time period for a newly articulated claim to satisfy the ex-

---

13. As described above, there were four new plaintiffs on the complaint in *Kumar v. Sudan,* but the district court did not deny the motion for default judgment as to them, and they are not now before us.

ception to res judicata is the point at which the complaint is filed in the previous case—the plaintiff's position—or the entire pendency of that case—the district court's view—because we conclude that res judicata should not apply here for three independent reasons. First, unlike an intervening change in case law, which almost never warrants an exception to the application of res judicata, a change in statutory law can present the basis for a new action. *See Alvear–Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir.2008). Although "passage of a new statute will not per se create a grounds for a new claim," "on rare occasions, when a new statute provides an independent basis for a claim for relief which did not exist at the time of the prior action, a second action based on the new statute may be justified." Moore's Federal Practice—Civil § 131.22 (2013). Such "rare occasions" may arise where "the subject of the prior action involve[s] substantial public policy concerns." *Id.* Here, both the change in *statutory* law between the plaintiffs' initial complaint in *Rux* and their complaint in *Kumar* and the substantial foreign and domestic policy concerns at issue in the kinds of terrorism cases brought under § 1605A justify an exception to the res judicata doctrine.

Second, one of the "core values" of the res judicata doctrine, "to free people from the uncertain prospect of litigation, with all its costs to emotional peace and the ordering of future affairs," Wright et al., *supra* at § 4403, would be ill served by barring the plaintiffs' claims in the *Kumar* case. While the preclusion doctrine's purpose of achieving settled expectations certainly applies in ordinary domestic civil litigation, it is "not as easily realized in th[e] sui generis context involving civil actions against foreign states." *Iran Terrorism Litig.*, 659 F.Supp.2d at 85. As Chief Judge Lamberth observed with respect to Iran, it "strains credulity" to suppose that a foreign state sponsor of terrorism "has any reliance interests or settled expectations with respect to prior civil actions litigated against it under § 1605(a)(7)," particularly where—as here—that foreign sovereign has failed to appear in the terrorism action filed against it. *Id.*

Finally, an interpretation that reads preclusion defenses into § 1605A and effectively shields state sponsors of terrorism would undermine the congressional purpose for enacting § 1605A in the first place.[14] *Cf. Alvear–Velez*, 540 F.3d at 680 (refusing to apply res judicata where to do so "would be inconsistent with [the] statutory scheme and therefore would frustrate" congressional policy decisions). Moreover, a determination that res judicata precluded the plaintiffs' claims under § 1605A would be inconsistent with the statutory canon that "remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Scarborough v. Atl. Coast Line R.R. Co.*, 178 F.2d 253, 258 (4th Cir.1949) ("Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers."). Although determining what constitutes a "remedial statute" or a

---

14. Although, as we concluded in Part II.A *supra*, NDAA § 1083(c) does not apply to this case, it is nonetheless relevant that Congress in § 1083(c)(2)(B) specifically waived res judicata and collateral estoppel defenses. Notwithstanding the cumbersome wording and placement of this waiver within the NDAA, we agree that it is "best understood as noth-

ing more than a poor choice of statutory language that is merely intended to reinforce the understanding that Congress and the President have accomplished a fundamental change in public policy with respect to actions against state sponsors of terrorism." *Iran Terrorism Litig.*, 659 F.Supp.2d at 86.

"liberal construction" may prove challenging in some cases, *see* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 364–65 (2012), this is not one of them. It is evident that Congress enacted § 1605A to address the inability of victims of terrorism to bring suit, under federal law, against wrongdoers, namely, the foreign states deemed responsible for perpetrating or otherwise supporting acts of terror.

### III.

We therefore reverse the judgment of the district court, and remand the case to allow the plaintiffs to pursue their claims under 28 U.S.C. § 1605A.

*REVERSED AND REMANDED.*

DAVIS, Circuit Judge, concurring:

My good friend has written an elegant opinion in which I am most pleased to concur. I offer these few sentences to underscore what Judge Duncan already makes clear: *sua sponte* invocation of the res judicata affirmative defense is and should be the rare exception, not the rule, and one reserved for truly "special circumstances." Lest there be any doubt, in my view, the circumstances surrounding the decade-long course of litigation before us here provide the applicable measure of such circumstances.